572 S.W.2d 934
**(Cite as: 572 S.W.2d 934)**

Page 2

of public policy to protect both an officer appointed by some power having "color" of authority to appoint him and the public relying on the validity of that appointment. However, as pointed out in 48 C.J.S. Judges s 2a(2) (1947), this doctrine is not applicable to the present fact situation: "There cannot be a de facto judge when there is a de jure judge in the actual performance of the duties of the office."

The dissent's reliance on Ex parte Tracey, Tex.Cr.App., 93 S.W. 538, and Germany is misplaced. Those cases dealt with judges appointed pursuant to constitutional statutes, while we here are concerned with three alternate judges appointed pursuant to a city ordinance which violates the mandates of both the Texas Constitution and the Civil Statutes.

The dissent would hold that a judge de facto is the judge de jure as to all parties except the State and require that the official acts of a de facto judge could not be successfully challenged except in a direct proceeding to which the judge is a party. The dissent's reliance on Snow v. State, 134 Tex.Cr.R. 263, 114 S.W.2d 898, overlooks the fact that Snow contemplated an either/or situation in which there was either a de jure judge or a de facto judge. Using this rationale, the city of Hurst now has Four de jure judges in spite of the fact that the Legislature, by constitutional authorization, has only provided for One de jure judge.

The dissent's reliance on Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) is similarly not helpful in the situation here presented, since the instant case has an incumbent de jure, whereas the incumbent in Buckley was appointed under the Federal Election Campaign Act of 1971 (as amended in 1974) which violated the appointment clause. Although the court held that the commission as it was then constituted could not constitutionally exercise the powers given to it by the act, past acts of the commission were accorded de facto validity. Public policy compelled the result in Buckley. However, public policy would not be served in the instant case by permitting a city ordinance to supersede clear constitutional mandates and statutory authorization by appointing as many "alternate" judges as the mayor may desire.

For these reasons, the State's motion for rehearing is overruled and the order revoking probation is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The majority holds that Section 12C-3 of the Hurst City Ordinances, which provides for the appointing of additional temporary (alternate) municipal judges, conflicts with Article 1196(a), V.A.C.S., and is thus void under the authority of Article 11, Section 5 of the Texas Constitution.

The majority further holds that the issuance of a search warrant in this cause by R. A. Hargrave could not be upheld as the act of a de facto *936 magistrate. [FN1] We should hold that Hargrave was a de facto officer and that the issuance of the search warrant was valid.

> FN1. The original opinion is reported in 546 S.W.2d 612 (Tex.Cr.App.1976). The State's motion to withdraw the mandate was granted.
> Appellant attacks the Court's authority to recall the mandate. Since the original opinion was handed down at the present term, we have the authority to withdraw it. Deramee v. State, 379 S.W.2d 908 (Tex.Cr.App.1964).

The State contends that acts of the alternate municipal judges in the City of Hurst are not void. The majority relies on Germany v. State, 109 Tex.Cr.R. 180, 3 S.W.2d 798 (1928). In Germany, this Court addressed the distinction between de jure and de facto officers and stated:
"Two persons cannot, at the same time, be in the actual occupation and exercise of an office for which the law provides only one incumbent. Thus an officer de jure and an officer de facto cannot be in possession of the same office at the same time, nor can two different officers de facto be in an office for which the law provides only one incumbent."

The principle enunciated in Germany that two persons cannot simultaneously be in the actual occupation and exercise of an office for which the law provides only one incumbent is inapposite to the instant case. Section 12C-3 of the Hurst City Ordinances provides for the appointment of additional judges to the municipal court and, thus, provides for the appointment of more than one incumbent to the office of municipal judge.

It is fundamental that a judge de facto is one acting under color of authority and who is regarded as exercising the functions of the judicial office he assumes. Ball v. United States, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377 (1891); McDowell v. United States, 159 U.S. 596, 16 S.Ct. 111, 40 L.Ed. 271 (1895); Ex parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1899); Snow v. State, 134 Tex.Cr.R. 263, 114 S.W.2d 898 (1937); Craig v. State, 171 Tex.Cr.R. 256, 347 S.W.2d 255 (1961). The rules governing this concept are contained in 48 C.J.S. Judges s 2a(2) (1947):
"A judge de jure is one who is exercising the office of a judge as a matter of right. A judge de facto is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes; he differs, on the one hand, from a mere usurper of an office who undertakes to act without any color of right; and, on the other, from an officer de jure who is in all respects legally appointed and qualified to exercise the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

office. In order that there may be a de facto judge there must be an office which the law recognizes, and where a court has no legal existence there can be no judge thereof, either de jure or de facto. There cannot be a de facto judge when there is a de jure judge in the actual performance of the duties of the office. Mere possession of the office is not sufficient to make the incumbent a de facto judge; to constitute him a de facto judge he must have color of title or his possession must have been acquiesced in by the public generally.

"Under these rules a judge who holds over after his term has expired may be a de facto judge. An unconstitutional statute is sufficient to give color of right or authority to elect or appoint a judicial officer, and a person elected or appointed by authority of such a statute is a de facto judge. In order to constitute a judge de facto, it is not necessary that he have color of appointment from a power having 'actual' authority to make the appointment, but it is sufficient that he has been appointed by some power having 'color' of authority to make it. . . ." (Footnotes omitted) (Emphasis added).

These rules have been consistently followed in this State. See 33 Tex.Jur.2d, Judges, Section 12. In Brown v. State, 42 Tex.Cr.R. 417, 60 S.W. 548, 549 (1901), this Court defined the de facto officer doctrine as follows:

"A de facto officer is one who is in possession of an office and discharging its duties under color of authority, by which *937 is meant authority derived from election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer."

In Anderson v. State, 149 Tex.Cr.R. 423, 195 S.W.2d 368 (1946), the defendant was convicted of driving while intoxicated. He contended on appeal that the act purporting to create the office of criminal district attorney in McLennan County was invalid as a special law in violation of Article 3, Section 56 of the Texas Constitution. This Court held that if the act were unconstitutional such act would not inure to the benefit of defendant because the criminal district attorney was a de facto officer. The Court then stated:

"While it is true, as a general rule, that in order for one to be a de facto officer there must be a de jure office, yet there are well-recognized exceptions to that rule. One of these is where an office is provided for by an unconstitutional statute, the incumbent, for the sake of public policy and public justice, will be recognized as an officer de facto until the unconstitutionality of the Act has been judicially determined. 43 Am.Jur., Public Officers, Sec. 475, and authorities there cited." (Emphasis added).

The de facto officer doctrine is intended to protect the public and individuals where they may become involved in the official acts of persons discharging the duties of an office. Ex parte Tracey, 93 S.W. 538 (Tex.Cr.App.1905);

Germany v. State, supra. Thus, where a statute is judicially determined to be unconstitutional, all acts performed by an officer under the authority of the statute prior to such determination are deemed to be valid and binding. Anderson v. State, supra.

This rationale was applied in the recent decision of Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In Buckley, the United States Supreme Court concluded, among other things, that most of the powers conferred by the Federal Election Campaign Act of 1971 (as amended in 1974) upon the Federal Election Commission could be exercised only by "Officers of the United States", appointed in conformity with Article II, Section 2, cl. 2, of the United States Constitution. The Court then held that the Act violated the appointments clause and, thus, that these powers could not be constitutionally exercised by the Commission as it was then constituted. Confronting the question whether the past acts of the Commission were void, the Court stated:

"It is also our view that the Commission's inability to exercise certain powers because of the (unconstitutional) method by which its members have been selected should not affect the validity of the Commission's administrative actions and determinations to this date, including its administration of those provisions, upheld today, authorizing the public financing of federal elections. The past acts of the Commission are therefore accorded De facto validity, just as we have recognized should be the case with respect to legislative acts performed by legislators held to have been elected in accordance with an unconstitutional apportionment plan. Connor v. Williams, 404 U.S. 549, 550-551, 92 S.Ct. 656, 658, 30 L.Ed.2d 704 (1972). See Ryan v. Tinsley, 316 F.2d 430-432 (C.A.10 1963); Schaefer v. Thomson, 251 F.Supp. 450, 453 (D.C., Wyo.1965), aff'd 383 U.S. 269, 86 S.Ct. 929, 15 L.Ed.2d 750 (1966). Cf. Richmond v. United States, 422 U.S. 358, 359, 95 S.Ct. 2296, 2298, 45 L.Ed.2d 245 (1975) (Brennan, J., dissenting)." 96 S.Ct. at 693.

A judge de facto is a judge de jure as to all parties except the State. Snow v. State, supra; Marta v. State, 81 Tex.Cr.R. 135, 193 S.W. 323 (1916). His right to hold his office can be questioned only in a direct proceeding instituted for that purpose in a court of competent jurisdiction or in a direct quo warranto proceeding. It cannot be attacked in a collateral proceeding even though the person acting as judge is legally incapable of holding the office. Craig v. State, supra; Snow v. State, supra. As this Court stated in Snow, "(i)n no event can a de jure judge, or a de facto judge claiming the office by color of appointment, and *938 actually performing the duties of such officer, be ousted, Or his official acts successfully challenged, except in a direct proceeding to which he is a party. Such a proceeding could

not be filed in this court originally, and could not be brought to this court by appeal because such an action would be a civil proceeding to test the right of an incumbent to hold a civil office of which this court has no jurisdiction." 114 S.W.2d at 901 (Emphasis added).

The United States Supreme Court is in accord. In Ex parte Ward, supra, petitioner was tried and convicted in the court presided over by Judge Edward Meek. He challenged the conviction by habeas corpus on the ground that Meek's appointment to the office was invalid because the appointment had not been confirmed by the Senate. The Court rejected the contention and stated:

"The result of the authorities is that the title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked; and as Judge Meek acted, at least, under such color, we cannot enter on any discussion of propositions involving his title to the office he held." 19 S.Ct. at 460.

Buckley v. Valeo, supra, reveals that the de facto officer doctrine is alive and well. We thus reaffirm the definition set forth in Brown v. State, supra.

In the instant case, R. A. Hargrave has unquestionably been holding the office of alternate municipal judge under color of authority by appointment and has been discharging the duties of such office. We should hold that, even though Section 12C-3 of the Hurst City Ordinance is invalid, R. A. Hargrave was a judge de facto and that his official acts were valid and binding on all interested persons, including appellant. Such acts cannot be collaterally attacked in this appeal.

The State's motion for rehearing should be granted and the judgment should be affirmed.

ROBERTS, J., joins in this dissent.

OPINION
ON STATE'S SECOND MOTION FOR REHEARING

W. C. DAVIS, Judge.

On original submission, the order of the trial court revoking appellant's probation was set aside and the cause remanded. French v. State, 546 S.W.2d 612 (Tex.Cr.App.). The State's First Motion for Rehearing was overruled by written opinion with Judge Douglas dissenting. The State has now filed a Second Motion for Rehearing which has been granted and we shall again consider the question presented.

[2] The majority of this Court now holds that a temporary judge of a home rule city is at least a de facto judge since Article 1196(a) V.A.C.S. does not expressly prohibit the appointment. But there is another reason why this case must

be reversed.

The power of the Legislature to create municipal courts is derived from Art. V, Sec. 1, Tex.Const., giving the Legislature power to create such courts as are not provided by the Constitution as the Legislature deems necessary to establish. Art. 1196(a), V.A.C.S. provides for municipal judges in home rule cities, such as the City of Hurst.

Art. XVI, Sec. 1 of the Constitution, as amended in 1956, provides that the oath of office to be taken by both elected officers And all other appointed officers, before they enter upon the duties of their offices. (emphasis added)

In this case, the record reveals the following testimony of Raymond A. Hargrave, Jr., who had been appointed an "alternate" municipal judge by the mayor of Hurst, pursuant to an ordinance of the City of Hurst:

"Q. Do you take an oath of office?
A. No, sir, the City Attorney has advised us that the Charter does not require an oath of office."

It has long been held in this State that a "Special Judge has no authority to act until he has taken the oath of office, (and that) "939 until he has taken the oath, his acts are a nullity." Baker v. State, 159 Tex.Cr.R. 130, 261 S.W.2d 593 (1953); Garza v. State, 157 Tex.Cr.R. 381, 249 S.W.2d 212 (1952); Enloe v. State, 141 Tex.Cr.R. 602, 150 S.W.2d 1039 (1941); and Davis v. State, 157 Tex.Cr.R. 146, 247 S.W.2d 392 (1952).

The dissent would hold that since Judge Hargrave was a de facto judge he had every right to act as such. We are not here dealing with the rights of a de facto judge but, rather, his right to act in that capacity as a judge, which right depends upon the taking of the oath of office prescribed by the Constitution, constituting a condition precedent to his right to act in that capacity. Brown v. State, 156 Tex.Cr.R. 32, 238 S.W.2d 787 (1950).

[3] We hold that without the taking of the oath prescribed by the Constitution of this State, one cannot become either a de jure or de facto judge, and his acts as such are void.

[4] The search warrant under which appellant's residence was searched and the evidence seized, having been issued by one who had not taken the oath of office, was therefore void and the evidence seized thereunder not admissible.

The State's Second Motion for Rehearing is overruled.

VOLLERS, J., not participating.

DALLY, Judge, dissenting opinion on the State's second motion for rehearing.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

572 S.W.2d 934
**(Cite as: 572 S.W.2d 934)**

Before serving a search warrant appearing valid on its face, must a peace officer who is duty bound to serve the warrant, Arts. 2.13 and 2.16, V.A.C.C.P. determine whether the magistrate issuing the warrant was appointed to his office under a valid law and determine also whether the magistrate took and filed a valid oath of office? Such requirements are unreasonable, and if prior decisions of this Court compel such a holding they should be promptly overruled.

Under the record before us Judge Hargrave was a de facto magistrate. See Ex parte Tracey, 93 S.W. 538 (Tex.Cr.App.1905), where after discussing Cary v. State, 76 Ala. 78, it was said:

"This is a well-considered case, citing a number of authorities in its support, and we believe announces a correct rule on the subject. To the same effect, see State v. Carroll, 38 Conn. 449, 9 Am.Rep. 409; In re Radl, 86 Wis. 645, 57 N.W. 1105, 39 Am.St.Rep. 918; Erwin v. Mayor Jersey City, 60 N.J.Law 141, 37 A. 732, 64 Am.St.Rep. 584; State v. Barnard, 67 N.H. 222, 29 A. 410, 68 Am.St.Rep. 648; Ex parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765; Pierce v. Edington, 38 Ark. 150. And for other cases see Amer. & Eng.Ency. of Law, vol. 8, p. 785. In all of these cases the doctrine is announced that, while a de facto officer may be one who holds under color of election or appointment, which may not be altogether regular, there is still another class who may be de facto officers without regard to any election or appointment; that is, one who exercises the duties of an office for a length of time, and acquiescence on the part of the authorities and of the public. In such cases the incumbent, regardless of his induction, may be considered a de facto officer. The whole doctrine of de facto officer is founded upon policy and necessity, in order to protect the public and individuals, where they may become involved in the official acts of persons discharging the duties of an officer, without being lawful officers. In the learned opinion of Chief Justice Butler, in State v. Carroll, supra, which appears to be considered the leading authority by all the courts, he says that a de facto officer may be such, under the following circumstances: First, without a known appointment or election but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be. Second, under color of a known and valid appointment or election but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like. Third, *940 under color of a known election or appointment, void, because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise; such ineligibility, want of power, or defect being unknown to the public. Fourth, under color of an election or

appointment, by or pursuant to a public unconstitutional law, before the same is adjudged to be such."

This Court should hold that Judge Hargrave was a de facto officer and that the search warrant which he issued was a valid warrant. I dissent.

DOUGLAS and ROBERTS, JJ., join in this dissent.

572 S.W.2d 934

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

LUIS GARZA v. STATE (06/04/52)

[1]      COURT OF CRIMINAL APPEALS OF TEXAS

[2]      No. 25,838

[3]      1952.TX.40687 <http://www.versuslaw.com>; 249 S.W.2d 212, 157 Tex. Crim. 381

[4]      decided: June 4, 1952.

[5]      **LUIS GARZA**
         v.
         **STATE**

[6]      Murder Without Malice. Appeal from district court of Jim Wells County; penalty, confinement in the penitentiary for five years. Hon. John A. Pope, Jr., Special Judge Presiding.

[7]      COUNSEL

[8]      Alaniz & Norris, Alice, for appellant.

[9]      George P. Blackburn, State's Attorney, Austin, for the state.

[10]     Davidson, Judge.

[11]     Author: Davidson

[ 157 Tex. Crim. Page 381]

     This is a conviction for murder without malice; the punishment, five years in the penitentiary.

[ 157 Tex. Crim. Page 382]

     This prosecution arose in Duval County. The venue for trial was transferred to Jim Wells County.

[12]     The record affirmatively reflects that the case was tried by and before a special judge because the regular judge was disqualified.

[13]     The special judge subscribed to the so-called old oath of office -- that is, the oath of office prescribed by the Constitution of this State prior to the adoption of the amendment to Art. 16, Sec. 1, of the Constitution of this State in 1938. The special judge did not subscribe the oath presently prescribed by our Constitution.

[14]     It is insisted that the trial, as well as the acts done and performed by the special judge, was null and void, because of his failure to subscribe the oath of office prescribed by our Constitution.

[15]     The case of Enloe v. State, 141 Tex. Crim. 602, 150 S.W.2d 1039, is directly in point, and sustains appellant's contention. We had occasion to there point out the difference between the so-called old and new oath of office. It would serve no useful purpose to here re-state the oath. The Enloe case has been followed in Brown v. State, 156 Tex. Crim. 32, 238 S.W.2d 787.

[16]     It follows that the judgment is reversed and the cause remanded.

[17]     Opinion approved by the court.

[18]     Disposition

[19]     Reversed and Remanded.

19520604

© 1998 VersusLaw Inc.

C. C. BROWN v. STATE (05/02/51)

[1]      COURT OF CRIMINAL APPEALS OF TEXAS

[2]      No. 25,057

[3]      1951.TX.40454 <http://www.versuslaw.com>; 238 S.W.2d 787, 156 Tex. Crim. 32

[4]      May 2, 1951

[5]      **C. C. BROWN**
         **v.**
         **STATE**

[6]      156 Tex. Crim. 32. On Rehearing March 21, 1951.

[7]      Davidson, Judge.

[8]      Author: Davidson

**[ 156 Tex. Crim. Page 34]**

         ON STATE'S MOTION FOR REHEARING.

[9]      The state, in its motion for rehearing, contends that our holding does violence to the rule which prohibits a collateral attack
         upon the right of a judge to hold office. Snow v. State, 134 Tex. Crim. 263, 114 S.W.2d 898.

[10]     We are not here dealing with the right of the special judge to hold that office but, rather, his right to act in the capacity of
         judge, which right depends upon his taking the oath of office prescribed by the Constitution, constituting a condition
         precedent to his right to act in that capacity.

[11]     The Enloe case, supra, fully sustains the views expressed.

[12]     The motion for rehearing is overruled.

[13]     Opinion approved by the court.

19510502

© 1998 VersusLaw Inc.

uced one Gamblin, who
ugust, 1939, he sold to
 party, a yellow-colored
ch was then about four-
ths old. It looked like a
heifer which Mr. Smith
rought back from Okla-
e animal which he had
 at least it did not look
Smith had understofore
imal which he lost at the
 was one which he ac-
blin. It will thus be
r the animal which ap-
rt Worth was the one
ie acquired from Clark-
ie which Smith acquired
s a sharply drawn issue
ecided adversely to ap-
1. Under the facts dis-
cord, we would not be
 aside the verdict of the

ear by Bill of Exception
trict Attorney, on cross-
e appellant, propounded
ng question: "Is it not
ntly you gave checks
 for amounts in excess
ecks were no good?"

ed to the question, but
verruled and he was re-
 and did answer, that he
 not knowing that he
his account at the bank.
ed this bill and in his
s "that he understood
ed about was one of
 a complaint had been
iat appellant testified on
ion by his counsel as
 given by him in Llano
iined the circumstances
 were given." The very
, on re-direct examina-
i, explained the circum-
h the checks were given,
 break the force and ef-
iony which he was re-
response to the question
rney. The giving of the
 not pertinent to any
ed any light upon appel-
ith the theft of the cow
s then on trial.

Jur., p. 53, sec. 31, it is
ral rule is that, on a
iarticular crime, the ac-
victed, if at all, by evi-

dence which shows that he is guilty of
that offense alone, and that evidence tend-
ing to show that he committed other of-
fenses wholly disconnected with that for
which he is on trial must be excluded.
In other words, evidence of the commis-
sion of independent crimes by the accused
is irrelevant where it has no tendency to
prove some material fact in connection
with the crime charged, or where it merely
tends to show that the accused is a criminal
generally."

[2] In the present instance, it seems
obvious to us that the testimony complained
of was highly prejudicial to the rights of
the appellant and should not have been ad-
mitted. See Owens v. State, 122 Tex.Cr.
R. 561, 56 S.W.2d 867; Curtis v. State,
104 Tex.Cr.R. 473, 284 S.W. 950; Wharton
v. State, 137 Tex.Cr.R. 558, 132 S.W.2d
877.

[3] It does not appear that any charge
had been preferred against appellant by
reason of the giving of the checks in-
quired about; it had not eventuated in a
complaint or indictment. Hence the same
could not be used by the State for the
purpose of impeachment. See 45 Tex.Jur.
p. 102, sec. 241. See also Hunt v. State,
89 Tex.Cr.R. 211, 230 S.W. 406; Newton
v. State, 94 Tex.Cr.R. 288, 250 S.W. 1036;
Cone v. State, 86 Tex.Cr.R. 291, 216 S.W.
190.

The bill of exception complaining of the
fact that a prejudiced juror sat upon the
trial of the case need not be discussed in
view of the disposition we are making of
this appeal; nor do we deem it necessary
to discuss any of the other matters com-
plained of because they will not likely occur
upon another trial.

For the error hereinabove pointed out,
the judgment of the trial court is reversed
and the cause remanded.


PER CURIAM.

The foregoing opinion of the Commission
of Appeals has been examined by the
Judges of the Court of Criminal Appeals
and approved by the Court.

On State's Motion for Rehearing.


BEAUCHAMP, Judge.

The state has filed a voluminous motion
urging grounds for the affirmance of this
case. Being reversed only on one assign-
ment of error, it will be necessary only to

consider that part of the motion which
refers to this assignment.

The original opinion definitely states
the rule of law to which we adhere. We
think it was clearly and sufficiently dis-
cussed in the original opinion and that it
is not necessary to write further thereon.

[4] The state urges its motion on the
ground that bill of exception number seven
in appellant's complaint is fatally defective
and that the same cannot be considered.
We have carefully re-read the record,
including the bill with the court's qualifi-
cation thereof, together with the authori-
ties cited by the state, and are of the opin-
ion that the bill sufficiently complies with
the rules and apprises this court of the
error so that we are enabled to appraise
its value. The propositions of law in-
volved are well settled, have been many
times discussed, and we deem it sufficient
to say that the state's contention cannot
be sustained.

The motion for rehearing is overruled.




ENLOE v. STATE.

No. 21420.

Court of Criminal Appeals of Texas.

May 14, 1941.

1. Judges ⚷16(2)

The oath prescribed by Constitution for
a public officer of state under 1938 amend-
ment to Constitution is substantially differ-
ent from oath required under prior provision
of Constitution, in that officer under present
oath must not only swear faithfully to per-
form duties of office, but, in addition, must
swear his allegiance to federal and state gov-
ernments, while former oath related only to
a performance of duties, and hence special
judge who subscribed to former oath did not
substantially subscribe to oath as presently
required by Constitution. Vernon's Ann.St.
Const. art. 16, § 1.

2. Judges ⚷6

In criminal case, one assuming to act
as a special judge without having first taken
oath as prescribed by Constitution could not

be a "judge de facto". Vernon's Ann.St. Const. art. 16, § 1.

See Words and Phrases, Permanent Edition, for all other definitions of "Judge De Facto".

**3. Criminal law ⟨key⟩970(5).**
   **Grand jury ⟨key⟩7**

Where special judge failed to take oath as prescribed by Constitution, special judge was without authority to organize and to empanel grand jury, and an indictment returned by grand jury empaneled by such special judge was void, and, indictment being void, defendant on motion in arrest of judgment was not under burden of challenging sufficiency thereof in limine. Vernon's Ann. St.Const. art. 16, § 1.

---

Appeal from District Court, Lynn County; Louis B. Reed, Judge.

L. A. Enloe was convicted of murder, and he appeals.

Reversed and remanded.

Nelson & Brown and Geo. W. McCleskey, all of Lubbock, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

HAWKINS, Presiding Judge.

Murder is the offense; the punishment, eight years' confinement in the state penitentiary.

Upon arrival of the time fixed for the convening of the regular February, 1940, Term of the District Court of Lynn County, the duly elected, qualified and acting judge of that court was, on account of illness, unable to be in attendance. The attorneys present, in accordance with the applicable statutes (Arts. 1887–1891, R.C. S.), elected C. H. Cain, a practicing attorney among their number, as a special judge of said court. The election was held, in all respects, in conformity with law, and no question is raised to the contrary.

As a condition precedent to entering upon the duties of the office, and in conformity with statutory mandate (Art. 595, C.C.P.) that a special judge take the constitutional oath of office, the following oath of office was taken by the special judge-elect: "I, C. H. Cain, do solemnly swear that I will faithfully and impartially discharge and perform all the duties incumbent upon me as SPECIAL DIS-TRICT JUDGE, Feb. Term, A. D. 1940, of Lynn County, Texas, according to the best of my skill and ability, agreeably to the Constitution and laws of the United States and of this State; and I do further solemnly swear that, since the adoption of the Constitution of this State, I, being a citizen of this State, have not fought a duel with deadly weapons within this State nor out of it, nor have I sent or accepted a challenge, to fight a duel with deadly weapons nor have I acted as second in carrying a challenge, or aided, advised or assisted any person thus offending; and I furthermore solemnly swear that I have not, directly or indirectly, paid, offered or promised to pay, contributed, or promised to contribute, any money or valuable thing, or promised any public office or employment, as a reward for the giving or withholding a vote at the election at which I was elected; and I furthermore solemnly swear that I will not be, directly or indirectly, interested in any contract with or claim against the county, except such warrants as may issue to me as fees of office, so help me God." .

It will be noted that the above is the form of oath prescribed by the Constitution of this State (Art. 16, Sec. 1) prior to 1938 Vernon's Ann.St. In that year, this Section of the Constitution was amended so as to read as follows: "I, ———, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of ——— of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and Laws of the United States and of this State; and I furthermore solemnly swear (or affirm), that I have not directly nor indirectly paid, offered, or promised to pay, contributed, nor promised to contribute any money, or, valuable thing, or promised any public office or employment, as a reward for the giving or withholding a vote at the election at which I was elected. So Help Me God."

After having so qualified, the special judge convened the court and organized and empanelled a grand jury, which afterwards returned into court the indictment upon which the appellant was tried and convicted.

Thereafter, the regularly elected judge having sufficiently recovered from his illness, assumed his duties as judge of the court and the trial of the case was before him, resulting in the conviction here appealed from.

By motion in arres[t] [ap]pellant, for the first sufficiency of the in[dictment] that it was void beca[use] which returned the organized and empane[led] fied to so act, in th[...] had not taken the oat[h] by the Constitution a[nd] acts were null and vo[id.]

As against appella[nt] insisted: (a) That so taken was in s[...] with that set forth in was, therefore, suff[icient] special judge was a[...] his authority to so a[ct] lenged by the appe[llant] appellant was unde[...] tacking the array o[...] they were empanelle[d] so could not challe[nge] the indictment by mo[tion] ment.

[1] We discuss[...] named. A reading oath shows that t[...] them lies, chiefly, i[n] the present oath, a[...] State, when taking now swear that he[...] fully execute the d[uties] in addition, "will to[...] preserve, protect, a[nd] tion and laws of[...] of this State."

Under the prio[r] the Constitution, t[...] quired to swear th[...] and impartially dis[charge] the duties incumb[ent] according to the be[...] ity, agreeably to th[e] of the United State[s]

It is, therefore, under our present[...] the first time, a pu[...] as a condition pr[e] lic office, where [...] quired, must swea[r...] ernment of the U[...] State by preservin[g...] ing their Constitu[...] tofore, the office[r...] swear to perform[...] agreeably to th[e...] while now he mus[t...] fully perform the[...] in addition, mus[t...]

**[Left column — partially cut off]**

eb. Term, A. D. 1940, of
:as, according to the best
ability, agreeably to the
aws of the United States
and I do further solemn-
ice the adoption of the
is State, I, being a citi-
have not fought a duel
ons within this State
have I sent or accepted
ght a duel with deadly
: I acted as second in
ge, or aided, advised or
n thus offending; and
mnly swear that I have
lirectly, paid, offered or
ontributed, or promised
noney or valuable thing,
ublic office or employ-
for the giving or with-
he election at which I
[ furthermore solemnly
not be, directly or in-
in any contract with
ie county, except such
ssue to me as fees of
id.".

that the above is the
ribed by the Constitu-
Art. 16, Sec. 1) prior
inn.St.  In that year,
onstitution was amend-
follows: "I, ——,
(or affirm), that I will
he duties of the office
ate of Texas, and will
iility preserve, protect,
stitution and Laws of
nd of this State; and
nly swear (or affirm),
tly nor indirectly paid,
l to pay, contributed,
tribute any money, on
promised any public
, as a reward for the
g a vote at the elec-
elected. So Help Me

qualified, the special
court and organized
nd jury, which after-
court the indictment
ellant was tried and

gularly elected judge
:overed from his ill-
ties as judge of the
of the case was be-
the conviction here

By motion in arrest of judgment, appellant, for the first time, attacked the sufficiency of the indictment and urged that it was void because the grand jury which returned the same had not been organized and empaneled by a judge qualified to so act, in that the special judge had not taken the oath of office prescribed by the Constitution and, therefore, all his acts were null and void.

As against appellant's contention, it is insisted: (a) That the oath of office so taken was in substantial compliance with that set forth in the Constitution and was, therefore, sufficient; (b) that the special judge was a de facto judge and his authority to so act would not be challenged by the appellant; and (c) that appellant was under the burden of attacking the array of grand jurors before they were empaneled and not having done so could not challenge the sufficiency of the indictment by motion in arrest of judgment.

[1] We discuss these in the order named. A reading of the two forms of oath shows that the difference between them lies, chiefly, in the fact that, under the present oath, a public official of this State, when taking the oath of office, must now swear that he will not only faithfully execute the duties of the office, but, in addition, "will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State."

Under the prior or old provision of the Constitution, the officer was only required to swear that he would "faithfully and impartially discharge and perform all the duties incumbent upon me * * * according to the best of my skill and ability, agreeably to the Constitution and laws of the United States and of this State."

It is, therefore, made to appear that, under our present Constitution, and for the first time, a public officer of this State, as a condition precedent to holding public office, where an oath of office is required, must swear allegiance to the government of the United States and of this State by preserving, protecting and defending their Constitutions and Laws. Heretofore, the officer was required only to swear to perform the duties of the office agreeably to the Constitutions and Laws, while now he must not only swear to faithfully perform the duties of the office but, in addition, must swear and affirm his

150 S.W.2d—66

personal allegiance to his governments. The former oath related only to a performance of the duties. The present oath, in addition, relates to a personal attitude and relation to his governments and their preservation.

In this present day and time, when subversive influences and activities which would destroy our governments and the principles upon which they are founded are abroad in this country, it is a matter of much concern and importance that our public officials should be required to swear their personal allegiance to, and belief in, the principles upon which our governments are founded. The wisdom of such an addition to the former oath is, therefore, demonstrated and readily apparent. Such addition is one of a substantial nature and should be strictly complied with.

The conclusion is reached that the two oaths are substantially different, and that one who subscribes to the old or former oath has not subscribed to the oath as now required by the Constitution of this State.

Whether a substantial compliance may be invoked in matters of this kind is not, therefore, before us or here decided.

[2, 3] The special judge having taken an oath of office, but not the one prescribed by the Constitution, raises the question as to his right to act as a de facto judge. The necessity for a special judge to take the oath of office as prescribed by the Constitution is not an open question in this state. This court has repeatedly spoken upon that subject. In Summerlin v. State, 69 Tex.Cr.R. 275, 153 S.W. 890, one of the reasons there assigned for a reversal of the case was because of the fact that the special judge had not taken the oath of office. The Summerlin case was followed in Mims v. State, 112 Tex.Cr.R. 176, 15 S.W.2d 628, 629, wherein this language is found: "We are also of opinion that, even when a special judge has been agreed upon or rightly appointed, he has no legal power or authority to act until he has taken the oath of office." We might extend this opinion by quoting from other cases, but will not do so. Suffice it to say that the rule has not been modified or changed throughout the years. See: Oates v. State, 56 Tex.Cr.R. 571, 121 S.W. 370; Sewell v. State, Tex.Cr.App., 291 S.W. 549; Salazar v. State, 102 Tex.Cr.R. 189, 276 S.W. 1105; Harris v. State, 124 Tex. Cr.R. 342, 62 S.W.2d 120; Johnson v.

State, 126 Tex.Cr.R. 121, 70 S.W.2d 173; Boyd v. State, 121 Tex.Cr.R. 585, 49 S.W. 2d 466.

From these cases, the rule appears to be that one assuming to act as a special judge without having first taken the oath as prescribed by the Constitution could not be a judge de facto. It follows, therefore, that all acts done or performed by the special judge are and would be null and void for want of authority. Applying that rule here, we hold that the special judge was without authority in law to organize and to empanel the grand jury, and that such grand jury was without authority to act as such or to present the accusation against the appellant in this case.

The indictment being void, appellant was not under the burden of challenging the sufficiency thereof in limine.

From what has been said, it follows that the judgment of conviction must be reversed and the prosecution ordered dismissed. It is so ordered.



---

**D. E. HARRIS, Appellant, v. STATE, Appellee.**

No. 21521.

Court of Criminal Appeals of Texas.

May 14, 1941.

Appeal from District Court, Lynn County; Louis B. Reed, Judge.

Joe S. Moss, of Post, and T. L. Price, of Post (on appeal), for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

HAWKINS, Presiding Judge.

Driving an automobile upon a public highway while intoxicated is the offense; the punishment, one year in the state penitentiary.

This case presents the same question this day decided in Enloe v. State, Tex.Cr.App., 150 S.W.2d 1039.

For the reasons there assigned, the judgment of the trial court is reversed and the prosecution ordered dismissed.

---

**MILLER v. STATE.**

No. 21609.

Court of Criminal Appeals of Texas.

May 14, 1941.

**1. Intoxicating liquors ⟸236(7)**

Evidence *held* sufficient to sustain conviction of possessing intoxicating liquor in dry area for purpose of sale.

**2. Intoxicating liquors ⟸249**

In prosecution for unlawful possession of intoxicating liquor, defendant's motion to quash search warrant on ground that property described therein was not owned by defendant, nor in his possession or under his control, was improper procedure.

**3. Criminal law ⟸1111(3)**

An appellant accepting bill of exception as qualified by trial court is bound thereby.

**4. Criminal law ⟸1091(5)**

On appeal from conviction for unlawful possession of intoxicating liquor, where bill of exception, asserting that appellant offered to prove that premises on which whisky was found by officers were not his property nor in his possession at time of search, was qualified by trial court's statement that appellant did not offer to prove that premises were not in his possession, bill reflected no error.

**5. Intoxicating liquors ⟸226**

In trial for unlawful possession of intoxicating liquor, testimony that whisky was found on defendant's premises, on which evidence showed that defendant lived and had lived for past two years, was admissible.

---

Commissioners' Decision.

Appeal from San Saba County Court; J. B. Harrell, Judge.

Eddie Miller was convicted of possessing intoxicating liquor in a dry area for the purpose of sale, and he appeals.

Affirmed.

Walter E. Gates, of San Saba, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

KRUEGER, Judge.

The conviction is for possessing intoxicating liquor in a dry area for the purpose

---

of sale. The punishment of $200.

[1] The record sho day of November, 1940 Saba County, armed wi and accompanied by oth agents of the Texas Li went to the home of E purpose of making a se toxicating liquor. As a they found five cases o 240 half-pints, or 48 ha The whisky was found creek about twenty-five door of appellant's dwe a trail leading from th where the whisky w sheriff testified that thi on appellant's premises testify or offer any affi was agreed by defenc County was a dry area dence sufficient to susta

[2] By Bill of Exce complains of the court' to sustain his motion warrant on the ground premises described in owned by appellant, no session or under his co dently followed the pr the Federal Courts. dure in our state cour ferent. See Buchanan R. 559, 298 S.W. 569; F Tex.Cr.R. 147, 291 S.W

Bills of Exception without merit and we s them at length.

[3, 4] By Bill of E lant contends that he the premises upon whic tion was found by the property of appellant at the time of the searc fied by the court, who s tion that appellant di that the premises in qu possession. Appellant qualified; hence he is qualified, the bill fails t

[5] Bill of Excepti Tom Warren was pern the whisky in question lant's premises, to whic no ground of objection witness knew that app sion of the premises w

628   (Tex.)      15 SOUTH WESTERN REPORTER, 2d SERIES

It is the announcement of the decisions that "a charge on self-defense should not group a number of facts and require the jury to believe them all before they are authorized to acquit." Branch's Annotated Penal Code of Texas, § 1944; Willis v. State (Tex. Cr. App.) 75 S. W. 793; Nix v. State (Tex. Cr. App.) 78 S. W. 227; Dodson v. State, 45 Tex. Cr. R. 571, 78 S. W. 940; Hightower v. State, 56 Tex. Cr. R. 248, 119 S. W. 691, 133 Am. St. Rep. 966; Graves v. State, 58 Tex. Cr. R. 42, 124 S. W. 678; McMillan v. State, 73 Tex. Cr. R. 343, 165 S. W. 576. The truth of the facts grouped in the charge on self-defense was disputed by the state. It follows that we are unable to say that the manner in which the issue of self-defense was submitted to the jury did not operate to the prejudice of appellant. In the state of the record reversible error is presented.

The court charged on abandonment of the difficulty by deceased. Several objections were interposed to this charge. Without discussing these objections in detail we observe that they appear to have been well taken. On another trial the charge of the court should be framed in such manner as to conform to the objections now brought forward.

For the errors discussed, the judgment is reversed, and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

---

### MIMS v. STATE.   (No. 12112.)

Court of Criminal Appeals of Texas.   March 27, 1929.

1. Judges ⟜16(1)—Special judge could not sit to try criminal case, where one defendant did not agree.

Special judge could not sit by agreement to try criminal case, where one of defendants did not know of agreement, and did not agree or consent that judge act as such judge.

2. Judges ⟜16(2)—Special judge has no authority to act until he has taken oath of office (Code Cr. Proc. 1925, art. 555).

Even where special judge has been agreed on or rightfully appointed, he has no legal power or authority to act until he has taken oath of office, under Code Cr. Proc. 1925, art. 555.

3. Judges ⟜16(2)—Where judge is selected by agreement or otherwise to try cases, oath of office must be taken in each case (Code Cr. Proc. 1925, art. 555).

Where special judge is selected by agreement or otherwise to try cases, oath of office required by Code Cr. Proc. 1925, art. 555, must be taken in each case.

4. Judges ⟜45—Where special judge was without authority to dismiss codefendant, codefendant was still legally party defendant, and regular judge related to codefendant was disqualified to try case against defendant (Code Cr. Proc. 1925, arts. 555, 556).

Where special judge was without authority to dismiss codefendant out of case, because he was not legally selected as special judge under Code Cr. Proc. 1925, art. 556, and had not taken oath of office in particular case required by article 555, when he entered order of dismissal, codefendant was still legally party defendant, and regular judge related to codefendant was disqualified to try case against defendant, and defendant's motion to have him recuse himself should have prevailed.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

R. K. Mims was convicted for willful misapplication of bank funds, and he appeals. Reversed and remanded.

J. R. Dougherty, of Beeville, and — Pope, Valdez & Pope and Gordon Gibson, all of Laredo, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

LATTIMORE, J.   Conviction for willful misapplication of bank funds; punishment, two years in the penitentiary.

We only notice those things necessary to dispose of the case. A number of indictments were returned, in which appellant and one Lafon were jointly indicted. One of these forms the basis for the instant prosecution. Upon facts set out and agreed to in connection with the hearing of appellant's motion for new trial, and upon other parts of the record, we base the following statement of the facts:

In one of said cases, but not this one, we infer that the judge, Hon. J. F. Mullally, certified and filed his disqualification, based on relationship to Lafon, and an agreement, apparently oral, was made between the district attorney, on behalf of the state, and the attorney for Lafon, on his behalf, that Hon. — T. Phelps should sit as special judge in said cause, same being No. 7438 on the docket. The purpose of the selection of Judge Phelps in that case seems to have been to receive a plea of guilty from Lafon. It is agreed that appellant and his counsel knew nothing of said proceeding, and did not agree or consent that Phelps act as such judge. It further appears that Judge Phelps took and subscribed the necessary oath of office in cause No. 7438. We are also informed that, after receiving Lafon's plea of guilty in cause No. 7438 and thus disposing of, or at least attempting to dispose of, that case, Judge Phelps was asked to enter orders and judgments dismissing the charge against Lafon in causes No. 7430 (the instant case) and No. 7436, which he did or attempted to do without the consent of appellant or his attorneys, without the filing of any instrument selecting such special judge in the last-mentioned cases and without such special judge taking any oath of office for taking such action. Being in cause No. 7430 (the instant case) the entry of an order of dismissal appears upon the minutes in Judge Phelps' name, written and subscribed thereto and taken down by him and then penciled erasers of said order two or three times, after which he then entered another order of dismissal as to the codefendant on May 9, 1928.

It appears that Judge Phelps subscribed the oath of office in cause No. 7430, but this last-mentioned order was made. Before the regular judge, Judge Mullally, took the bench as judge of the court in said cause No. 7430, claiming that, by reason of disqualification of Lafon from the case by reason of appointment of Special Judge Phelps, the cause and ground of which he had been removed, he was no further disqualified. When appellant moved properly that Judge Mullally recuse himself, claiming Lafon was still legally a party, this was overruled, to which exception was reserved. Judge Mullally sat, and again in the motion for new trial these questions were presented and again overruled, and a bill of exceptions to the refusal of the motion.

Article 555 of our Code of Procedure requires that the attorney appointed as special judge shall enter upon his duties as such and take the oath of office required by Article 556, C. C. P., prove and enter this fact in the minutes of the proceedings in such cause. We must believe that the regular minutes shall show by proper proceeding that the regular judge was obtained to try the cause; that said special judge was * * * agreed upon by the parties to the case.

[1] We are of opinion that a special judge sit by agreement by agreement of all parties. Mixner v. Logwood (Tex. Civ. App.) 283 S. W. 960; Bomar v. Morris; Fariss v. Trust Co. (Tex. Civ. App.) 128 S. W. 663; Fariss Trust Co. (Tex. Civ. App.) casties v. Purney, 34 Tex. Civ. App. Austin, p. 1029.

[2,3] We are also of opinion that, when a special judge has been rightly appointed, he has no authority to act until he has taken the oath of office. Summerlin v. State, 275, 153 S. W. 890. The entry —

dismiss codefendant, code
legally party defendant
related to codefendant was
y case against defendant
925, arts. 555, 556).

dge was without authority
nt out of case, because he
cted as special judge under
25, art. 556, and had tak-
in particular case as re-
55, when he entered order
endant was still legally a
d regular judge related to
qualified to try case against
dant's motion to have him
ld have prevailed.

trict Court, Webb County,
ge.

convicted for willful mis-
k funds, and he appeals.
anded.

, of Beeville, and Pope,
pe and Gordon Gibson, all
ellant.

tate's Atty., of Austin, for

J. Conviction for willful
bank funds; punishment
enitentiary.

those things necessary in
e. A number of indictments
which appellant and one
ly indicted. One of these
or the instant prosecution
t and agreed to in conne-
ring of appellant's motion
d upon other parts of the
the following statement

cases, but not this one, we
ge, Hon. J. F. Mullally, ter-
is disqualification, based on
fon, and an agreement, at
s made between the district
lf of the state, and the at-
on his behalf, that Hon S.
sit as special judge in said
g No. 7438 on the docket
e selection of Judge Phelps
s to have been to receive
m Lafon. It is agreed that
s counsel knew nothing of
and did not agree or consent
s such judge. It further a
Phelps took and subscribed
h of office in cause No. 7438
ormed that, after receiving
uilty in cause No. 7438 and
f, or at least attempting to
ase, Judge Phelps was asked
nd judgments dismissing the
afon in causes No. 7430 and
d No. 7436, which he did or

in this record shows that the special judge
took *an oath of office* on May 9th, but noth-
ing shows such oath to have been taken *in
this case,* and the testimony of Judge Phelps,
in connection with the motion for new trial,
makes clear the fact that, when he attempted
to dismiss Lafon from this case, he had tak-
en and subscribed no oath of office in this
case. Manifestly there is a difference be-
tween being elected or appointed to act as
special judge during a given term or period,
in which event one oath of office would suf-
fice, and the selection by agreement or other
wise of a special judge to try one case, in
which latter event the oath of office would
have to be taken in each such case.

[4] If Judge Phelps was without authority
to dismiss Lafon out of this case, because not
legally selected as special judge, and for the
further reason that he had not taken any
oath of office in this particular case, when he
entered the order of dismissal, it would nec-
essarily follow that Lafon is still legally a
party defendant herein, and that Judge Mul-
lally was disqualified to try this case, and
the appellant's motion to have him recuse
himself should have prevailed.

Appellant raises a rather serious question
as to the sufficiency of the indictment, but, as
stated above, we discuss no questions other
than necessary to the disposition of the case.

For the error mentioned, the judgment is
reversed, and the cause remanded.

---

## BANNISTER v. STATE. (No. 12038.)

Court of Criminal Appeals of Texas. Feb. 27,
1929.

Rehearing Denied April 3, 1929.

1. Criminal law ⬥394—Evidence of officers'
conversation had with defendant's husband
held admissible to establish validity of search
for intoxicating liquor.

In liquor prosecution, evidence of conversa-
tion as to permission given by defendant's hus-
band to officers to search the house, though giv-
en out of defendant's presence, *held* admissible
to establish the validity of the search.

2. Searches and seizures ⬥7(27)—Consent of
husband equally in control and management
of premises with wife would make legal search
had thereunder.

In liquor prosecution, even if defendant was
equally in control and management of premises
with her husband, his consent given to officers
would suffice to make legal a search had there-
under.

3. Searches and seizures ⬥7(27)—Search of
premises for intoxicating liquors under con-
sent given by defendant's husband held valid.

Search of premises for intoxicating liquors
under consent given by defendant's husband
thereto *held* valid.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes



# EXHIBIT "G"



AP file photo

**Defining moment:** George W. Bush takes the presidential oath, administered by Chief Justice William Rehnquist, on Jan. 20, 2001, in Washington. Bush will be sworn in Thursday for a second term. Readers weigh in on inaugural details.



THE NEW YORK TIMES/OZIER MUHAMMAD

President Bush takes the oath of office from the Chief Justice William Rehnquist. With him are first lady Laura Blair and daughters Barbara and Jenna.

FRIDAY, JANUARY 21, 2005  50 CENTS

9/30/2005

# ROBERTS SWORN IN



— AP Photo By Lawrence Jackson

**NEW CHIEF JUSTICE:** Supreme Court Justice John Paul Stevens swears in John Roberts as the 17th chief justice of the United States in the East Room of the White House on Thursday. Roberts' wife, Jane, is at right, holding the Bible.



By Tim Dillon, USA TODAY

**Taking the oath:** Justice John Paul Stevens, right, swears in John Roberts as chief justice of the United States on Thursday at the White House. Holding the Bible is Roberts' wife, Jane. The Senate confirmed Roberts on a 78-22 vote.

Pg. 5A

www.star-telegram.com

Feb. 2, 2006

## U.S. SUPREME COURT



THE ASSOCIATED PRESS/RON EDMONDS

Supreme Court Justice Samuel Alito, center, takes the oath of office administered by Chief Justice John Roberts during a ceremonial swearing-in Wednesday at the White House. He had officially joined the court Tuesday, the day he was confirmed by the Senate.



AMERICAN STATESMAN, LAURA SKELDING / ASSOCIATED PRESS

**Judge Priscilla Owen is sworn in at the Texas Supreme Court chambers in Austin on Monday. Her mother, Phyllis Derrick, holds the bible as she is sworn in by Texas Supreme Court Justice Nathan Hecht.**

*JUNE 7, 2005*

# Priscilla Owen takes oath for federal bench

**BY KELLEY SHANNON**
ASSOCIATED PRESS

AUSTIN — Texas judge Priscilla Owen, the subject of a long and heated confirmation battle in the U.S. Senate, took the oath of office Monday for her new seat on the 5th U.S. Circuit Court of Appeals.

Owen, a justice on the Texas Supreme Court for more than a decade, won Senate confirmation to the federal post last month after a four-year fight over President Bush's push to place conservatives on the nation's highest courts. She became the first of Bush's long-blocked nominees to win approval under an agreement reached by centrists in the Senate.

"This has been a long road," Owen, 50, said after she was sworn in at the Texas Supreme Court chamber. Her brief remarks were limited mostly to thanking her family, friends and colleagues along with her farewell to the Texas Supreme Court.

"This is bittersweet for me because I'm saying goodbye to some of the finest people I've ever had the pleasure of working with," she said.

The crowd in the court chamber gave Owen a loud, long standing ovation after she took the oath of office. She used one of Sam Houston's Bibles.

Owen was first nominated by Bush to the federal appeals court in May 2001. She continued to serve on Texas' highest civil court while awaiting confirmation.

Democrats argued that Owen allowed her political beliefs to color her rulings. They were particularly critical of her decisions in abortion cases involving teenagers.

But Republicans said those criticisms were politically motivated. They noted that she easily won election to the Texas Supreme Court in 1994 and re-election in 2000.

"The president stood firm against those who would distort her record," Texas Supreme Court Chief Justice Wallace Jefferson said. He said it was hard to imagine the strength Owen mustered to withstand four years of criticism.

U.S. Sen. Kay Bailey Hutchison and Gov. Rick Perry, two Texas Republicans who may compete against one another in the 2006 gubernatorial race, also spoke at Owen's swearing-in ceremony and praised the way she conducted herself.

Hutchison, who worked toward getting Owen a confirmation vote in the Senate, said Owen displayed "judicial temperament" while never complaining about her treatment in the Senate.

"Priscilla Owen stood, and she stood with integrity," Hutchison said. "She took it like a champion and deserves to be sitting on the federal bench today."

Perry said Owen demonstrated class and style. He told Owen's family, "Your prayers were heard."

Chief Judge Carolyn King of the 5th U.S. Circuit Court of appeals said Owen is filling a post vacated in 1997. That judge took on a more limited role with the court known as senior status.

"We have been waiting eight years for you. But you, Priscilla Owen, have been worth the wait," King said.

The appeals court is based in New Orleans. It hears appeals from federal district courts in Louisiana, Texas and Mississippi.