# EXHIBIT "H"

Case 4:07-mc-00033-A   Document 3-11   Filed 11/29/07   Page 2 of 21   PageID 276

**Feature**      fw



*Randell —
let's stay
in touch —
Dan Malone*

**S Help God**

A bench full of
unsworn judges could
cause serious cussing
at the courthouse.
By Dan Malone

The words are repeated so often in courtroom dramas
and crime stories that most people know them by
heart. Witnesses called to the stand in a trial are asked
to raise their right hands and solemnly swear to "tell
the truth, the whole truth, and nothing but the truth, so
help me God."

Swearing to God, of course, won't prevent a
determined liar from shading the truth or telling a
whopper. But the ritual is such a fundamental element
of American jurisprudence that a conviction, even for
a serious crime, can be overturned if a witness
testifies without taking that oath.

Witnesses aren't the only ones required to take oaths.
Jurors swear to carefully consider the facts in a case.
Prosecutors swear to seek justice, not just convictions.
And the Texas Constitution requires officeholders --
from the governor and the Supreme Court chief
justice on down -- to take an oath pledging fidelity to
the laws of the land.

Case 4:07-mc-00033   Document 3-11   Filed 11/29/07   Page 3 of 21   PageID 277

But what are the consequences if a judge -- an official who would be expected to know the law better than anyone -- presides over a trial without taking the constitutionally required oath of office? Such a failure, according to a little-noticed state appellate court ruling, can invalidate a judge's actions.

In Fort Worth, lawyers for a Northside businessman are testing that premise, seeking to overturn Jesus Rivera Cantu's drug conviction because, Cantu's lawyer and family say, the judge in the case had not taken the oath.

**NEXT »**

Pages: 1 2 3 4 5

©2003 FW Weekly All rights reserved. | Privacy Policy

## Feature     fw

Pages: 1 2 3 4 5

« BACK

The issue has the potential to cause ripples across the state. A court administrator said that in North Texas alone, scores of temporarily assigned judges have presided over cases without taking the oath. The League of United Latin American Citizens, which is supporting Cantu's appeal, is also drawing attention to the larger issue of unsworn judges.



Jesus Cantu says the judge in his case didn't take a required oath.

That leaves the Texas justice system in a quandary: Even while the Texas attorney general's office and local prosecutors are opposing Cantu's appeal, the attorney general's office has already conceded in court records that the "failure of a judge to take a required oath of office renders his actions void."

Cantu, a 45-year-old building contractor, was convicted in 1998 of drug possession after being accused of involvement in a Mexico-to-Texas marijuana smuggling operation that police say generated hundreds of thousands of dollars.

"While I was growing up in Mexico, I always thought the U.S.A. was a country of the best government and the laws were perfect," Cantu wrote in a letter from state prison. After spending more than four years behind bars for a crime he says he did not commit, Cantu said his opinion has changed: "The law is not always applied equally to everyone. Some people are exempt...."

Howard Martin Fender, a former chief justice of the Fort Worth-based 2nd Court of Appeals, presided over Cantu's trial as a visiting judge. Fender had retired two years earlier but continued to work when needed in several Tarrant County courts -- a common practice used around the state to purge clogged courtrooms of pending cases or when a judge not connected to a local community is needed.

In a telephone interview at his home, Fender said he has taken oaths of office several times during his career but doesn't believe he was required to take one just to preside over Cantu's case.

"If I tried to take an oath of office for every case I tried, I'd spend all my time taking oaths of office," he said. "I know lots of other judges who have done the other things I have done and they don't file an oath of office every time they get an appointment."

**More Metropolis from**

March 27, 2003

**In the Trenches against Tocco**
A general is leading guerrilla warfare against Fort Worth schools leadership.
By Ken Shimamoto
- - - - - - - - - -

**Booted Over Jackboots**
An Arlington reporter's e-mail cost him his job.
By Jeff Prince
- - - - - - - - - -

**Static**
Public Servant for Peace
- - - - - - - - - -

**Letters to the Editor**
From the week of March 27
- - - - - - - - - -

**On Second Thought**
Is Fort Worth's newest sports team just fantasy basketball?
By Jennifer Briggs

It is not clear how many convictions might be called into question because other judges didn't take their oaths of office -- but the potential for problems appears to be widespread.

Fender is among some 40 retired, former, or senior judges who, from time to time, are assigned to preside over cases in the 8th Administration Judicial District, which includes Tarrant County. How many of those jurists took the oath of office before the 1999 ruling from the El Paso-based appellate court? "Probably none," said Jeff Walker, the 8th district's presiding judge.

"That was the first time that any court had spoken on the subject of oaths of office," Walker said. "Prior to that time, it is my understanding, at least, that everyone thought that a former or retired judge who had originally taken the oath when they became an active judge, that that oath stayed in effect."

Today, all judges are required to take the oath "out of an abundance of caution," he said. "Prior to the El Paso case, that was not the case."

Mark Taylor Davis is the El Paso lawyer who persuaded the appellate court to overturn a lower court ruling based on the judge's failure to take the required oath. Judges, he said, have to follow the law like everyone else.

"Every witness who takes the stand is required to first take an oath to impress upon the witness the gravity of the situation and the importance of telling the truth," Davis said. "The same is true of a judge, whether by appointment or election. The oath is to impress upon him... that he has to follow the law. Judges are human beings just like every one else. Taking the oath is to remind them, just like the witness, that they must follow the law."

The much-amended Texas Constitution requires state officials, including judges, to make two sworn statements before taking office.

The first, an affirmation that the job wasn't acquired through bribery, states: "I do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected or as a reward to secure my appointment or confirmation...so help me God."

Once that so-called anti-bribery statement is filed, the official is then required to take the actual oath of office specified word-for-word in the Constitution. "I do solemnly swear (or affirm) that I will faithfully execute the duties of the office of (fill in the blank) of the

Case 4:07-mc-00033●● Document 3-11 Filed 11/29/07 Page 6 of 21 PageID 280

State of Texas, and will to the best of my ability preserve, protect and
defend the Constitution and laws of the United States and of this
State, so help me God."

**NEXT »**

Pages: 1 2 3 4 5

**fwweekly.com** | Metropolis | Music | Eats | Calendar | The Arts | Film | Best of FW | E-
mail the Editor | Discussions | Classified | Archive | Staff | E-letter

©2003 FW Weekly All rights reserved. | Privacy Policy



## Feature                                                        fw

Pages: 1 2 3 4 5

« BACK

Judges in Texas, from justice of the peace to chief justice, are elected. Texans periodically debate whether to amend their Constitution to require that judges be appointed, as they are in many other states. That debate is driven by the notion that subjecting judges to partisan elections erodes their impartiality.

As a practical matter, however, the state long ago gave up on its 100-percent-elected standard. Crowded dockets and courtroom shortages led to a system in which visiting judges are appointed to preside over hundreds of trials across the state. Some of those appointed in Tarrant County are retired judges who just can't let go of the gavel. Visiting judges are paid 85 percent of a sitting judge's daily pay.

Every two years, former judges who still wish to don a robe and bang a gavel fill out applications in which they state that they are qualified and willing to serve. Presiding judges in the state's nine judicial regions tap into that pool of applicants as needs arise.

Fort Worth is the seat of the 8th Administrative Judicial Region, where Walker, who also serves as judge of Tarrant County's 96th District Court, assigns duties to visiting judges like Howard Fender.

Fender, now 82, has been a fixture at the Tarrant County courthouse for more than 50 years. The former World War II bomber pilot and West Point grad was first elected to public office in 1952 as Tarrant County district attorney. He went on to work as an assistant Texas attorney general before beginning a career as a judge. He's presided over a variety of Tarrant County courts, including a stint as chief justice of the 2nd Court of Appeals, before retiring in 1996

Records show that Walker appointed Fender to preside over Cantu's 1998 trial in Criminal District Court No.4. Records show Fender took an oath in 1983, when he was chief justice, and in 2000, after the El Paso ruling. But no oath of office for him has been found for the 1998 trial.

Fender said he recalls filing oaths when he was elected to the bench, but said it has not been common practice among appointed judges to take oath again. "As far as these appointments, I don't recall any of us

**Blanca Cantu, left, shown with grandson Adolfo and daughter Veronica, has fought to bring the issue of judges' oaths to light.**

**More Metropolis from**

March 27, 2003

**In the Trenches against Tocco**
A general is leading guerrilla warfare against Fort Worth schools leadership.
**By Ken Shimamoto**
- - - - - - - - - -

**Static**
Public Servant for Peace
- - - - - - - - - -

**Letters to the Editor**
From the week of March 27
- - - - - - - - - -

**On Second Thought**
Is Fort Worth's newest sports team just fantasy basketball?
**By Jennifer Briggs**



Case 4:07-mc-00033-Y    Document 3-11    Filed 11/29/07    Page 8 of 21    PageID 282

filing an oath of office on that," he said.

Fender discussed the oath of office issue at length during an initial telephone call but declined further comment after the Weekly sent him copies of his oaths of office and the appellate court case indicating that a new one might be needed.

"I don't feel like I should make any further comment," Fender said. "I'm satisfied I'm not called to take any action."

At least one visiting judge has been worried about the oath of office issue for years.

C.C. "Kit" Cooke said when he first started filling in as visiting judge back in the mid-1980s, he was concerned that no one required him to take an oath before he began hearing cases. "I asked around all over the state," Cooke said. When he couldn't get anyone to say whether an oath was needed, he opted to err on the side of caution. "I've always felt like we had to, and I've always done it," he said.

The watchdog over Texas' judiciary is the State Commission on Judicial Conduct. An agency spokeswoman said the oath of office issue is somewhat unsettled, but steered a reporter to the case from El Paso, in which the facts closely parallel those in the Cantu's case.

Spokeswoman Seana Willing said commission rules prevent her from discussing whether a judge has been privately sanctioned for not taking an oath, but she said that no judge has yet been publicly disciplined on those grounds. She also said the commission is willing to look into the issue on a case-by-case basis.

"It will become an issue for us if people start complaining to us," she said.

In the El Paso case, the 8th District Court of Appeals threw out a visiting judge's order in 1999 -- the year after Cantu was convicted -- because he had not taken the oath.

Judge Jerry Woodard -- like Fender -- had been a judge for years. Woodard -- like Fender -- had also served on a state appellate court, the same one that would later rap him for not taking the oath. Woodard last took an oath of office when he went on the appellate court in 1986 -- three years after Fender's 1983 oath. And when he retired in 1992, Woodard applied -- like Fender -- for assignments so he could continue to hear cases. Woodard failed to take an oath when he was appointed -- just as Cantu claims Fender failed to do.

In Woodard's case, the defendant failed to show up for trial, and the judge ordered Prieto Bail Bonds to forfeit the $40,000 bond it had posted. The bond company appealed the decision, arguing that

Woodard lacked authority because he had failed to take the oath --
and the three-judge panel that heard the case agreed. The court said
senior judges such as Woodard "must take the oaths required of
appointed officers under Article 16, Section 1 of the Texas
Constitution."

"We are hard pressed ... to hold that one with the authority to preside
over litigation and adjudicate the interests of the litigants in a
courtroom in the State of Texas should, or can, be exempt from an
oath to preserve, protect and defend the Constitution and the laws of
the United States and the State of Texas," the opinion concluded.
"Because Judge Woodard was required to take the constitutional
oaths but did not do so, all judicial actions taken by him in the case
were without authority."

**NEXT »**

Pages: 1 2 3 4 5

©2003 FW Weekly All rights reserved. | Privacy Policy

# Feature    fw

Pages: 1 2 3 4 5

« BACK

The El Paso appellate court doesn't have statewide jurisdiction. But prosecutors, according to Walker, have twice tried to get a higher court to overturn the decision -- and failed both times. The Tarrant County district attorney's office, which prosecuted Cantu and has defended the conviction on appeal, contends Fender's omission is harmless.

"If someone acts as D.A. but has failed to take the oath, usually their actions are ratified when they remedy that defect," said Alan Levy, the head of the D.A.'s criminal division. "As a general principle of law, if someone operates under the appearance of authority, they have authority."

Levy, however, is a trial court magician, not an expert on appeals, and he referred questions about the issue to his colleague, Chuck Mallin, head of the D.A.'s appellate division. Mallin agreed that judges must take the oath of office, but said Cantu waited too late to raise the issue.

"The judges need to do that -- no question about it," Mallin said. The obstacle Cantu must overcome, he said, is the failure of his lawyer to raise the issue at trial. Except in extraordinary circumstances, issues that aren't raised at trial are difficult to raise on appeal. Beyond that technicality, however, Mallin said Fender's failure to take the oath of office also had nothing to do with the question of Cantu's guilt.

"It would not have made a difference," Mallin said. "How's he harmed? How does it affect the judgment?"

———————————————————

Four and a half years after his trial, Jesus Cantu, through hard work and staying out of trouble, is eligible for parole. Officials said his release from the Allred prison unit outside Wichita Falls is imminent. However, he still might not regain his freedom.

Cantu's wife, Blanca, said that he is a legal resident of the U.S., but state officials said immigration authorities want to further detain him for illegally entering the country. Even if that problem is resolved, the combination of being an immigrant and a convicted felon poses further complications. Congress in the mid-1990s passed a series of immigration law "reforms" that, among other things, require the automatic deportation of immigrants with serious felonies. Cantu's appeal, which has been rejected by state courts, is pending before a

More Metropolis from

March 27, 2003

**In the Trenches against Tocco**
A general is leading guerrilla warfare against Fort Worth schools leadership.
By Ken Shimamoto
- - - - - - - - - -

**Booted Over Jackboots**
An Arlington reporter's e-mail cost him his job.
By Jeff Prince
- - - - - - - - - -

**Booted Over Jackboots**
An Arlington reporter's e-mail cost him his job.
By Jeff Prince
- - - - - - - - - -

**Static**
Public Servant for Peace
- - - - - - - - - -

**Letters to the Editor**
From the week of March 27
- - - - - - - - - -

**On Second Thought**
Is Fort Worth's newest sports team just fantasy basketball?
By Jennifer Briggs

federal court in Dallas.

Cantu has the distinction of having helped construct the building in
which he lost his freedom. He testified during trial that his
construction crews poured three floors of concrete in the courthouse
where he was convicted.

Cantu came to the United States in the mid-1970s. He worked
construction, ran a concrete crew, then started his own construction
business in the mid-1980s. He also bought and sold horses, built
horse trailers, and sold imported marble tabletops from Mexico. After
starting out as a $2.50-an-hour laborer, he went on as a business
owner to make good money -- $65,000 one year, $80,000 another, he
wrote in a letter from prison. Over time, he said, he socked away
more than $500,000.

He's also had his share of financial problems, including a bankruptcy
and tax liens -- problems that officials claim led him to traffic in
marijuana when his legitimate businesses lagged.

Cantu was arrested eight years ago after police seized 600 pounds of
marijuana they found in a Northside warehouse Cantu had rented for
his construction business. Cantu said he was set up by an
acquaintance he later came to believe was a drug dealer -- a man
indicted but never tried for the same crime for which Cantu was
sentenced to 20 years in prison.

The Cantus said they left the United States to visit relatives and
business contacts in Mexico a little over a week before Thanksgiving
1994. Before they left, Cantu loaned the keys to his shop to a dump
truck operator he had met several months earlier. That acquaintance
wanted to make repairs on his truck -- and Cantu said he saw no
reason not to let him use his shop.

The Cantus returned from Mexico the weekend after Thanksgiving.
They were getting ready for bed when narcotics officers knocked
their doors down, searched their home, and announced that they had
found hundreds of pounds of marijuana in Cantu's shop.

Cantu gave officers permission to search another house he owned,
and inside they found his half-million in savings -- money police say
came from dope dealing and which Cantu said was the product of
years of hard, legitimate work.

Police said Cantu told them that he and his acquaintance were in the
drug business. Cantu said he told officers that the drugs belonged to
the acquaintance alone.

Bob Mitchell is a former Tarrant County grand juror who knows both
men. He leased Cantu the warehouse where the drugs were seized

Case 4:07-mc-00033-●●   Document 3-11   Filed 11/29/07   Page 12 of 21   PageID 286

and sold a vehicle to the acquaintance. Mitchell said he thinks police sent the wrong man to prison.

Mitchell said the acquaintance told him he sold drugs when his dump truck business fell into a slump and that "when it got to raining and they couldn't make any money, selling that marijuana was an easy way to make money."

Mitchell said he would gladly have testified during Cantu's trial -- but he wasn't to appear. NEXT »

Pages: 1 2 3 4 5

©2003 FW Weekly All rights reserved. | Privacy Policy

**Feature**                                                                    **fw**

Pages: 1 2 3 4 5

"I knew Mr. Cantu to be a hardworking man, a construction company owner and a manufacturer of trailers. I never saw anything suspicious or illegal," Mitchell said. "The man I think was responsible for it, they let him get away and go back to Mexico."

―――――――――――――――

Like many prisoners facing long sentences, Cantu has studied jailhouse lawyering. During his research, he came across the plain words in the Texas Constitution requiring judges to take sworn oaths.

His wife, Blanca, has searched in vain for someone in state or county government who can provide her with proof that Fender took the required oath. Finally, she enlisted the help of Joe Guerrero, president of LULAC Council 601 in Fort Worth, in her quest.

Blanca Cantu and Guerrero have written letters requesting copies of Fender's oath covering the period of Cantu's trial. They made numerous trips to the Tarrant County courthouse and the state capitol seeking the same. They've found oaths for Fender dated 1983 and 2000 -- but not one for the 1998 trial.

Guerrero said he and Cantu have worn out their welcome with state and county clerks. "They say, 'This is all we have. This is all we have, this is all we have,'" he explained. "We tried to get it in writing. They said they can't do that."

Guerrero makes his living as a hair stylist and runs a popular salon in Sundance Square. People who make a living cutting hair have to follow the law, he said, and so should people who make a living judging others.

"I have a license I have to renew every two years," Guerrero said. "All I want is ... to make sure everyone who is supposed to have an oath of office is in compliance."

In records filed in federal court, where Cantu's appeal is pending, attorney Jason Mills argues that Cantu deserves a new trial because the judge "was without authority to preside over the case as there was no local oath of office filed with the county nor with the Secretary of State as required by the Texas Constitution."

The Texas attorney general's office is defending Cantu's conviction. The assistant attorney general handling the case, Ellen Stewart-Klein, has conceded in court records that judges must take the oath, but she claims Cantu failed to prove that Fender didn't take the oath.

**More Metropolis from**

March 27, 2003

**In the Trenches against Tocco**
A general is leading guerrilla warfare against Fort Worth schools leadership.
**By Ken Shimamoto**
- - - - - - - - - -

**Static**
Public Servant for Peace
- - - - - - - - - -

**Letters to the Editor**
From the week of March 27

"While it is clear under Texas law that a failure of a judge to take a required oath of office renders his actions void, Cantu has not proven that various officials did not take their oaths of office," Stewart-Klein wrote in the state's response to the appeal. "All Cantu has proven is that the oaths were not on file."

The Weekly wanted to ask Stewart-Klein whether the state believes Fender actually took the oath. But she declined comment through an associate. So it remains unclear exactly what the state would have Cantu do to prove his point.

Cantu's trial lawyer, Abe Factor, said he was unaware that Fender hadn't taken the oath until a reporter told him that Cantu's appellate lawyer was using the issue to challenge Cantu's conviction.

Prior to the Prieto ruling, Factor said, it didn't occur to defense attorneys to verify whether a judge -- even one serving on a visiting basis -- had his paperwork in order.

"I suppose at this point people will start checking," Factor said. " It might really affect a lot of cases."

Mark Davis, the lawyer who raised the no-oath issue in El Paso, said he's surprised it hasn't already become an issue across the state.

"If you don't take the oath of office in the manner prescribed by the constitution, you are not a judge," he said. "It's no different than going out in the street and asking someone to put on a black robe.

"You've got to do it exactly the way the people of Texas said."

You can reach Dan Malone at dan.malone@fwweekly.com

« BACK

Pages: 1 2 3 4 5

©2003 FW Weekly All rights reserved. | Privacy Policy

http://www.fwweekly.com/issues/2004-03-10/feature.html/page1.html

BLACK ROBES AND BIG QUESTIONS  by  Dan Malone, Liddy Serio, &  Joyce Tsai 3-10-04

Texas courts have been telling judges for more than 60 years that their decisions are in jeopardy unless they take the oath of office required by the Texas Constitution. Time and again, the courts have said judges must vow to "to preserve, protect, and defend" the laws of the land. And when judges are found to have served without an oath, appellate courts have overturned civil and criminal cases alike.

Despite such consequences, repeated warnings, and the unambiguous language of the Texas Constitution itself, a disturbing number of Texas judges just don't get it. And the Texas legal system could wind up paying a heavy toll in overturned convictions and trials as a result.

A statewide review of judicial records by Fort Worth Weekly indicates that hundreds of visiting judges across the state have served without taking the required oath of office. In a crucial two-year period in the late 1990s, the Weekly was able to identify oaths for only about two dozen of 250 judges.

The problem permeates the state judiciary, imperiling public confidence in the justice system and calling into question court decisions made in cases stretching from El Paso to the Piney Woods, from the Panhandle to the Mexican border. The issue pits civil rights activists and prisoners' advocates against experienced jurists and the bureaucracy that runs the state court system. And it raises difficult questions about what should happen if judges don't follow the letter of the law themselves.

"It destroys the confidence of everybody," said Joe Guerrero, a League of United Latin American Citizens official in Fort Worth who is trying to get a new trial for a Northside businessman convicted before a jurist who had not taken an oath as a visiting judge. "They want people to obey the law, but they're not obeying the law."

"It's a major constitutional judicial error," said John Pizer of the Prison Legal Aid Association. The Arizona-based national organization advocates for prisoners it believes have been wrongly convicted, including a number of Texans who were tried before judges who had not signed the oath.

No one yet knows the breadth of the problem, but it is rooted in Texas' widespread practice of appointing former judges to temporary positions to help carry the workload of the state's elected -- and overburdened -- judiciary. Some are appointed to hear specific cases; others sit for long stretches, hearing case after case.

Until the late 1990s, the practice in most Texas courts was to assume that the oaths judges took when they were last elected still covered them when they returned to the bench in a visiting capacity. But a precedent-setting ruling from an El Paso appeals court, which called into question the validity of actions taken by judges who had not filed new oaths, changed that in 1999.

"We did not require oaths of office until after the case came out of El Paso," said B.B. Schraub, chairman of the council of presiding judges. "Based on that, the presiding judges collectively decided to secure oaths from all our judges."

"It's just uncontested that no one signed them [oaths] before then, so obviously, there is going to be a high number" of cases before 1999 where visiting judges had not taken new oaths, said Kelly Glen Moore, presiding judge of the 9th Administrative Region in the Texas Panhandle.

The numbers of judges for whom no oaths were found dropped sharply after the late 1990s, when the state began a concerted compliance effort. Still, records indicate some judges continued to serve after that without oaths.

Does it matter? The El Paso appellate decision -- and rulings by the state's highest criminal appeals court -- say that it does, and that rulings made by judges who have not taken appropriate oaths can be overturned. However, the Texas Supreme Court has yet to rule on the issue as it affects civil cases. Chief Justice Tom Phillips, through a spokesman, declined an interview request for this story.

But critics suggest that judges who have failed to take the oath should be removed and decisions in cases over which they presided should be overturned.

"A judge has to be ruling constantly on the legality of certain evidence presented," Pizer said. "A judge who is so careless and thoughtless and sloppy in his judicial business that he neglects to take an oath just out of carelessness is not the kind of judge we want making those decisions."

The Weekly began looking at judicial oaths after Jesus Cantu, a Northside homebuilder, complained that the visiting judge in his case had not taken an oath. When a reporter asked about other similar cases, an official with the Texas Commission on Judicial Conduct said she was aware of about a dozen similar challenges around the state but wouldn't identify the other cases. Her refusal prompted the Weekly's review of the statewide records -- which showed that the number of similar situations number not in the dozens, but probably in the hundreds.

Checking qualifications for most professions in Texas is easy. The State Bar can confirm whether a person is a licensed lawyer. The State Board of Medical Examiners keeps records on physician licenses. Other agencies keep tabs on professionals as varied as architects, police, and barbers. Trying to find a state judge's professional "papers," however, can be a major chore because they're filed in government offices across the state. Anti-bribery oaths are filed with the Texas Secretary of State in Austin. But actual oaths of office are spread among nine regional judicial offices. For instance, in egion 8, which includes Tarrant and 17 other Northwest Texas counties, visiting judges are required to file their oaths with 96th District Court Judge Jeff Walker, who also serves as the region's presiding judge.

No central agency keeps track of all of those documents. As a result, the records, once located, are often incomplete and contradictory.

The Weekly used the newly established Rule 12 of the Texas Supreme Court, which makes the administrative records of the court available to the public, to obtain copies of all oaths filed by visiting judges since Jan. 1, 1997.

Matching those records to a list of visiting judges maintained by the Office of Court Administration, the Weekly examined year by year whether individual judges had filed an oath of

office or anti-bribery statement. From 1997 to 1999, about 250 judges were listed as serving on visiting assignment. For that group, the Weekly found only about two dozen had signed oaths of office.

Further, the validity of some of the oaths that were filed is questionable. For example, oaths for eight judges failed to note a year in which the oath was taken. Five other judges took oaths in which they recorded the year but not the day of the month.

Some district can't find records. Some appear to have few oaths on file prior to 1999, while others provided records as far back as 1990.

Such record-keeping problems have little to do with the substance of a judge's ruling, said Darrell Hester, the presiding judge of a South Texas region.

"Do you really think a judge is going to act differently or do something unlawful because he hasn't filed an oath?" he asked.

Texas has long prided itself on its elected judiciary. Unlike federal judges and judges in other states, most Texas jurists -- from Chief Justice Tom Phillips down to a local justice of the peace -- run for office like other politicians. After the votes are counted, newly elected or re-elected judges show up at courthouses and city halls for the routine ceremonies in which oaths of office are administered.

But the workload of the Texas court system long ago outstripped the supply of elected judges to handle the ever-growing number of criminal prosecutions and civil lawsuits that are filed each year. To manage the excess, the state adopted a program under which former judges -- jurists who had quit, retired, or been tossed out by voters -- could be assigned temporarily to courts as "visiting" judges. This allowed the state to take advantage, for example, of experienced Democratic judges who lost their jobs during Republican sweeps, or the years of experience gained by a veteran judge who had retired but remained interested in working part-time.

Judges for years assumed that the oath of office they took when they were last elected continued to be effective when they were appointed to visiting posts. Then, in 1999, the appeals court ruling in a civil lawsuit shattered that assumption.

The ruling stemmed from a 1992 drug case in which Prieto Bail Bonds posted a $40,000 bond for an accused marijuana dealer named Victor Manuel Saenz. When Saenz failed to show up for a court appearance the following year, prosecutors asked the courts to order Saenz' bond forfeited. That case was assigned to visiting Judge Jerry Woodard, a veteran jurist who had retired after serving 17 years as a district judge in El Paso and then six years on the Eighth Court of Appeals. The last time he took an oath of office, according to court records, was when he was elected to the appellate court in 1986.

Prieto's attorneys contested Woodard's forfeiture order with what seemed then to be a novel claim. The order wasn't valid, the attorneys argued, because the judge hadn't taken an oath when he accepted the appointment to preside over the special "drug impact court" in which the Prieto case was filed.

The challenge was first heard by Judge Woodard's former associates on the Eighth Court of

Appeals. That court rejected the appeal, but, in a footnote to its ruling, expressed concerns about the issue of the oath. "We are far from convinced that the last oath taken by judges in their elected capacity continues to cloak them with anything but the barest judicial imprimatur after that term expires," the court said. "Elected judges must take a new oath with each new term: We cannot see how senior or former judges' oaths may survive their terms of office, while those taken by a judge successfully seeking re-election do not."

At the next appellate level, the Texas Court of Criminal Appeals ordered a review of the case, and the judges of the Eighth Court changed their minds. The reservations expressed in the footnote now blossomed into the text of the opinion itself. This time, the judges wrote that they could "see no logic whereby a senior judge's oath would survive an expired term of office, while that taken by a judge successfully seeking re-election would not." They ruled that, "Because Judge Woodard was required to take the constitutional oaths, but did not do so, all judicial actions taken by him on the case ... were without authority." The foundations on which hundreds of visiting judges around the state were standing crumbled beneath their feet.

Texas presiding judges say they have attempted to clean up the problem since the Prieto ruling. Schraub, the presiding judges' chairman, said he wasn't surprised to hear that the Weekly had found few oaths for judges prior to 1999. "We went through a period of adjustment, but ultimately we're satisfied in this region that those who participate in the assigned judge program have on file with us an oath," he said. "I'm not going to say we had all that in place on Jan. 1, 1999... . This is an evolving thing."

Walker, the presiding judge of the Fort Worth region, said that "The requirement on the oaths is on the shoulders of individual judges." To conclusively determine who did and did not take one, he said, "You'd almost have to ask every judge who was required to take an oath."

Records reviewed by the Weekly show that, since 1999, the presiding judges have made progress in obtaining oaths from visiting judges. But the records are sometimes incomplete or contradictory.

In the Ninth Region, which includes the Texas Panhandle, for example, no oaths were found for two deceased judges, Grainger McIlhany and Ray Anderson -- and Anderson was the region's former presiding judge. Records show both jurists served through 2000. Anderson's successor is Judge Moore, who said his administrative assistant disposed of those files when the judges died. He said just because an oath can't be found doesn't mean one wasn't taken.

Judge Anderson "was running the program and since he required all the judges in 1999 to take oaths, I think it would be a mistake to assume that he didn't just because there is not a record of it," Moore said. Like other presiding judges around the state, he said he wouldn't expect to find oaths for those or any other visiting judge before Prieto. "I think it could be fairly assumed that neither had taken an oath prior to 1999," he said.

There are also indications that some appointed appellate court judges may have served without taking fresh oaths. Records filed in one U.S. Supreme Court case identify an appellate court justice in a Houston case who did not take an oath.

[Page 4 of 7]

In other cases, appointed judges chose to err on the side of caution. The Weekly found more than 40 instances in which judges filed oath after oath during a single year. Whether this was evidence of a judge being overly cautious or being appointed to several different courts was not clear.

Other judges filed new oaths when their titles changed. For example, Paul McCollum took a fresh oath as senior justice on the Eight Court of Appeals in 2000 to replace the one he had taken in 1997 as a former justice -- but questioned whether it was necessary. "In view of the fact that you have an overabundance of storage space, I am filing another Oath of Office," McCollum wrote in a message to a presiding judge. "I thought out of perhaps an overabundance of precaution I would file a new oath, even as I have filed a new statement of appointed officer with the secretary of state. I am confident it doesn't make a particle of difference."

Although the 1997 state law created new filing requirements for judges' oaths, the requirement to take the oaths has been in effect for many years. And inmates who were convicted in trials before unsworn judges before Prieto say their cases also deserve to be reconsidered.

Two inmates serving murder sentences at a state prison near Abilene are challenging their convictions on the grounds that the visiting judges who presided over their cases in 1995 and 1996 had not taken oaths.

In a letter to the Weekly, one of the inmates, Russell Jay Reger said he was tried by a visiting judge in 1996. That judge's oath, Reger said, expired in 1991 when he lost a re-election campaign. He compared the judge's appointment to "officials having run down to the basement of the courthouse, grabbed a janitor, threw a black robe on to [him] and told [him] to sit on the bench at my trial and 'play judge.'" Reger wrote, "There are literally hundreds of cases in Tarrant County alone, be them criminal, civil, family, probate, tax, and/or juveniles, that are founded upon null and void convictions [or] judgments due to those old judges failing to renew their oaths. ... There are thousands more around the state."

The issue of visiting judges and their oaths of office was first raised by the Weekly in a March 27, 2003, report about Jesus Cantu's claim that he was wrongly convicted of a drug offense. Cantu was attempting to win a new trial on evidence that indicated the judge who presided over his trial, Howard Fender, had not taken an oath.

According to records gathered by Cantu's family and the Weekly, Fender took an oath in 1983, when he was chief justice of the Second Court of Appeals in Fort Worth. After retiring in 1996, Fender was appointed to preside over Cantu's 1998 trial. Records show Fender took oaths again in 1999 and 2000, but none during the time of Cantu's trial. Fender has said that he didn't think he was required to take an oath every time he was appointed as a visiting judge.

Cantu finished serving his prison sentence and was deported to Mexico, although he is still fighting to get his conviction overturned. Since the deportation, his wife, Blanca, has had one foot in Texas and the other in Mexico, trying to nurture a marriage in which her children live in one country and her husband in another.

"To me, it's devastating," she said. "In my husband's case, he always said he was innocent. The judge didn't pay attention. Really, he wasn't a judge. He was a nobody. If they represent the law, why don't they go by it? They expect us as citizens to obey the law."

[Page 5 of 7]

The Cantus and LULAC's Joe Guerrero are trying to determine if they can initiate a class action lawsuit that would include the hundreds of defendants they believe were tried by unsworn judges in the late 1990s. "Imagine how many cases have been [acted on] in all of these years when they [visiting judges] didn't have anything," Blanca said.

Cantu is continuing his appeal because he hopes one day to return to the United States. But the courts have set an almost impossibly high standard of proof for him to meet. His appeal has failed because of his inability to prove a negative -- that his judge didn't take an oath.

Cantu had argued in court papers that he could find no record of Fender's having taken an oath with state or regional judicial officials. But a federal judge said failing to find a record falls short of proving it doesn't exist. "This claim is without merit," the judge wrote. "Texas courts have routinely held that the absence of a record on file ... does not establish that the oaths were not taken."

Others, however, have been able to meet that burden. In the Prieto case, Judge Woodard was found not to have taken the oath when he was appointed. And in 1977, the Texas Court of Criminal Appeals tossed out a Hurst drug case because a municipal court judge had failed to take an oath.

"We hold that without the taking of the oath prescribed by the Constitution of this State, one cannot become either a de jure [lawful] or de facto [actual] judge, and his acts as such are void," the top criminal appellate court wrote.

Guerrero also asked the Texas Commission on Judicial Conduct to investigate Cantu's case, but commissioners declined, leaving the decision to the appellate courts. The commission's director said earlier this year that her agency is unable to take action against judges, who don't have oaths unless they acted in bad faith.

The ruling in the 1977 Hurst drug case "certainly supports the proposition that a judge's actions are void if he/she has failed to take the requisite oath of office," Seana Willing told the Weekly in an e-mail, but "it doesn't change the conclusion we must reach, absent a showing of bad faith on the part of the judge, that the complainant must address this issue on appeal, not through the disciplinary process.

"I know this seems like a harsh result," she said, "but we are bound ... from acting like a super appellate court ... ."

One appellate attorney who has researched the law -- and who asked not to be named -- said he expects Texas' conservative appellate judges to be very reluctant to grant new trials because of missing oaths, regardless of what the Constitution and the law say. "I can't imagine the courts wouldn't write around this -- particularly our Court of Criminal Appeals," he said.   Attempts to overturn cases based on oathless judges could also be derailed in cases where the issue wasn't raised at trial. While proving that a particular judge took an oath is do-able, proving that one didn't can be daunting, as Jesus Cantu is finding out.

And yet in at least one case, the Court of Criminal Appeals has shown itself willing to overturn a murder conviction when a defendant can prove the judge in his case failed to take the oath.

[Page 6 of 7]

That's exactly what happened more than 60 years ago when the Court of Criminal Appeals, in a ruling with wartime language that still seems appropriate, ordered the prosecution to dismiss a case against a Lamb County murder defendant.

"In this present day and time, when subversive influences and activities which would destroy our governments and the principles upon which they are founded are abroad in this country, it is a matter of much public concern and importance that our public officials should be required to swear their personal allegiance to, and belief in, the principles upon which our governments are founded," the court ruled. Quoting from an even earlier ruling, the court said a judge has "no legal power or authority to act until he has taken the oath of office."

[Page 7 of 7]