NO.  C-3-3690-0579930-A

| | | |
|---|---|---|
| EX PARTE | § | IN THE CRIMINAL DISTRICT |
| | § | |
| | § | COURT NUMBER THREE OF |
| | § | |
| RUSSELL JAY REGER | § | TARRANT COUNTY, TEXAS |

**FILED**
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

**AFFIDAVIT**

AUG -6 1998

Time _____ 3:50 PM
By _____ mm Deputy

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

My names is Noel Portnoy.  I wish to make the following statement of my own free will and accord, which to the best of my knowledge and belief is true and correct.

I was retained by Applicant Russell J. Reger to represent him in his case wherein he was charged with murder in Cause No. 0579-930-D, in the Criminal District Court No. 3 of Tarrant County, Texas.  Trial was had between April 8 and April 12, 1996.

Regarding the allegation that there was no defense investigation of the case: I retained Bill VanSyckle, a licensed private investigator, to investigate the facts of this case, and together, we did thoroughly investigate the facts. At my request Mr. Van Syckle conducted a door to door search for fact witnesses up and down the block where the offense was committed. Further, he provided his own aerial photos of the crime scene.  He also interviewed neighbors of the deceased to gather relevant evidence and to try to find out if they observed the deceased on the night of the offense; these neighbors proved to be somewhat unfriendly. Mr. Van Syckle also interviewed a number of the eyewitnesses who were State's witnesses, as well as the medical expert who testified as to the results of the autopsy on the deceased.  Mr. Van Syckle also interviewed the defense witnesses

AP EX # 1

Page 1

whom I subpoenaed for trial. Mr. Van Syckle also interviewed several potential witnesses at the direction of Mr. Reger several days before trial, and discussed with Mr. Reger the scope and extent of his investigation.

I myself investigated the actual crime scene several times, and the directions and distances between the home of the deceased and the defendant, and took my own set of photographs of the crime scene and the route to it. I also investigated the scene of the prior "fight" between deceased and Michael Furr at the Sleepy Hollow Apartments in Arlington, Texas, and took photographs of that also; I myself interviewed an Assistant Apartment Manager there. I myself interviewed in person or on the telephone each of the witnesses whose testimony I presented at trial, and other possible witnesses who were not called. By way of further preparation I also obtained a copy of the sworn testimony of Vickie Storey given at her deposition on August 16, 1995, in her custody lawsuit against William and Doris Storey, in Cause No. 325-220184-95, as well as the relevant documents in that lawsuit. I also obtained certified copies of the relevant documents and papers from the divorce case between deceased and Vickie Storey, in Cause No. 325-207935-94. Furthermore, I obtained a Court Order to have the urine samples of Deceased tested for the presence of steroids and/or anabolic steroids, and paid for these tests. I also retained the services of TLSI, Inc., a Grand Prairie computer company, to attempt to retrieve any phone messages possible from Mr. Reger's computer, and made several trips to their offices. I arranged to have Mr. Reger examined by a psychologist.

I also had numerous interviews with Applicant regarding the facts of the case and the total defense effort. It was Mr. Reger who always insisted that he had acted in self-defense and that that was the defense that he wanted to present on a not guilty plea. I discussed with him the possible application of the lesser charge of Voluntary Manslaughter if any; he desired and insisted that he plead not guilty by reason of self-defense. A number of times prior to trial, and

prior to his testimony during trial, I also discussed with Mr. Reger the fundamental difficulty that was posed by the results of the physical evidence and of the autopsy, which showed the deceased, who was not armed, had been shot four (4) times with Mr. Reger's rifle at different angles and distances. I explained that the physical evidence made argument of self-defense very tenuous at best. However, Mr. Reger explained both to me and to Mr. Van Syckle at different times not only prior to but also during trial a sequence of events as to the actual shooting that would comport with the autopsy results. However, Applicant did not testify as to this particular sequence of events at his trial. Mr. Reger's failure to testify as to the actual shooting sequence in accordance with his previous statements to me and Mr. Van Syckle, after we had entered a plea of not guilty, was very detrimental to his claim of self-defense.

I would like to add that, prior to retaining Mr. Van Syckle to investigate the case, I also paid a Mr. Lester Gutierrez, whom Mr. Reger had previously chosen or retained, to continue his investigation of this case. Mr. Gutierrez stated to me that he thereafter performed a door to door investigation of the crime scene, but I never saw any results from Mr. Gutierrez, he would not return the phone calls of myself and Mr. Van Syckle, and I consider the payments made to him wasted.

After Applicant's motor vehicle accident on April 5, 1996, I stated to Applicant that if he would obtain a letter from a physician that he was physically unable to participate in the trial scheduled for April 8, 1996, I would request a continuance. He stated to me, after treatment by Dr. Darryl Nix, his doctor, that Dr. Nix would not give him such a letter because that was not his opinion. I do not recall that Mr. Reger again brought up the subject of a continuance. I fully conferred with Mr. Reger at his home during the weekend prior to trial, and throughout the trial, and he also conferred with Mr. Van Syckle after the accident and before and during the trial. I also had ample

interaction with his relatives and friends and witnesses, as he did with them also. No one, including Mr. Reger, ever mentioned to me any problem that Mr. Reger may have had in understanding the proceedings or contributing to his defense. At the meeting between Mr. Reger, Mr. VanSyckle and myself, during the trial and before his testimony, we fully discussed the sequence of events surrounding the shooting.

I did not request a pre-trial evidentiary hearing because the State had complied with all of my evidentiary requests, there was no dispute as to my pre-trial motions, and the State had provided me with the entire contents of their file, other than attorney work product.

Although I have not at this time read the Statement of Facts of the trial, I believe that the Statement of Facts will show that generally I did question and cross-examine the State's witnesses. Regarding Mrs. Storey, the mother of the deceased, I did not believe that she would testify to anything helpful to the defense if she could avoid it, nor did I want to evoke anger from the jury for seeming to adopt an aggressive cross-examination attitude toward her.

Regarding the testimony of Ron Venerable with respect to the prior "fight" between Michael Furr and the deceased, i.e., that Ron Venerable (and not the deceased), had beaten up Michael Furr: I did not want to call the other participant, Michael Furr, as a witness even if he was available (even though I had requested a subpoena for him) because he was totally hostile to Mr. Reger, and in my judgment would have testified to anything which he considered to be detrimental to Applicant at the trial.

Regarding the failure to subpoena the phone company records, I am not aware that there are phone company records of local phone calls which are not collect and are not cellular phones. Furthermore, I believe that the evidence was clear as to who called whom on the final phone call in which Reger and Matt Storey talked. As I recall the testimony, Vickie Storey, who turned into a

hostile witness, testified that the phone rang and Mr. Reger answered it and talked with Matt Storey, so that it was clear that the deceased had called and Mr. Reger had answered.

Respectfully submitted,

*Noel Portnoy*

Noel Portnoy
State Bar No. 16162000
4026 Lemmon Avenue
Dallas, Texas 75219-3736
(214) 741-3028
(214) 741-3029 facsimile

THE STATE OF TEXAS        §
                          §
COUNTY OF DALLAS          §

    BEFORE ME, the undersigned authority, on this day personally appeared Noel Portnoy, known to me to be the said person whose name is subscribed to the foregoing Affidavit and who under oath stated that he has read the foregoing Affidavit and that it is true and correct to the best of his knowledge and belief..

    SUBSCRIBED AND SWORN TO before me on August 6, 1998.

DEE GREEN
NOTARY PUBLIC
State of Texas
Comm Exp 09-30-2000

Notary Public in and for the State of Texas

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Affidavit has been furnished to Jennifer Lehman, Assistant Criminal District Attorney for Tarrant County, Texas, 401 W. Belknap, Fort Worth, Texas 76196-0201, on this 6th day of August, 1998.

_Noel Portnoy_
Noel Portnoy

EXHIBIT "K"

REPORTER'S RECORD

VOLUME 1 OF 1

TRIAL COURT CAUSE NO. 096-223426-07

| IN RE: | IN THE DISTRICT COURT |
|--------|------------------------|
| RUSSELL JAY REGER, | TARRANT COUNTY, TEXAS |
| PETITIONER, PRO SE | 96TH JUDICIAL DISTRICT |

————————————————————————————————

PETITIONER REGER'S MOTION
TO DISQUALIFY/RECUSE JUDGE JEFF WALKER

————————————————————————————————

On the 29th day of June, 2007, the following proceedings came on to be heard in the above-entitled and -numbered cause before the Honorable David L. Evans, Judge Presiding, held in Fort Worth, Tarrant County, Texas:

Proceedings reported by machine shorthand.



MICKI SMITH, CSR, RPR ~ TEXAS CSR NO. 6926
Official Court Reporter
48th District Court, 8th Floor
401 West Belknap Street, Fort Worth, Texas 76196

A P P E A R A N C E S

Mr. Russell Jay Reger (By Telephone)
TDCJ - CID No. 747783
French M. Robertson Unit
12071 FM 3522
Abilene, Texas  79601-8749
PETITIONER APPEARING PRO SE

Mr. Randal Franklin Caraway  (By Telephone)
TDCJ - CID No. 756105
French M. Robertson Unit
12071 FM 3522
Abilene, Texas  79601-8749
INTERVENOR APPEARING PRO SE

Mr. Steve Conder
SBOT NO. 04656510
TARRANT COUNTY DISTRICT ATTORNEY'S OFFICE
401 W. Belknap Street
Fort Worth, Texas  76102
Phone:  (817) 884-1687
Fax:    (817) 884-1672
ATTORNEY FOR RESPONDENTS

1       VOLUME 1

2           PETITIONER REGER'S MOTION
        TO DISQUALIFY/RECUSE JUDGE JEFF WALKER
3

June 29, 2007                              PAGE     VOL
4
Proceedings............................    4        1
5
Presentation by Mr. Reger..............    6        1
6
Presentation by Mr. Caraway............    12       1
7
Presentation by Mr. Conder.............    14       1
8
Proceedings Adjourned..................    17       1
9
Court Reporter's Certificate...........    18       1
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | *(Friday, June 29, 2007, 1:43 p.m.)* |
| 3 | THE COURT:  This is Judge David Evans |
| 4 | speaking.  Who is on the line? |
| 5 | OFFICER GONZALEZ:  This is Officer |
| 6 | Gonzalez. |
| 7 | Judge Evans, at this time I will be |
| 8 | placing the phone on speakerphone. |
| 9 | THE COURT:  Judge David Evans. |
| 10 | OFFICER GONZALEZ:  Judge, this is |
| 11 | Officer Gonzalez.  I will be placing the phone on |
| 12 | speakerphone. |
| 13 | THE COURT:  You may proceed. |
| 14 | OFFICER GONZALEZ:  Yes, sir.  Are you |
| 15 | still there? |
| 16 | THE COURT:  Yes, I am, Officer. |
| 17 | Are Mr. Reger and Mr. Caraway present? |
| 18 | OFFICER GONZALEZ:  Yes, sir, they are. |
| 19 | THE COURT:  Mr. Reger, would you please |
| 20 | identify yourself. |
| 21 | MR. REGER:  Yes.  Russell Jay Reger, |
| 22 | Petitioner, pro se. |
| 23 | THE COURT:  And, Mr. Caraway, would you |
| 24 | please identify yourself. |
| 25 | MR. REGER:  Franklin Caraway, Intervenor |

1  at the institution, pro se.

2              THE COURT:  We are here in Cause

3  No. 48-223426-07 *[sic]*; styled *In Re:  Russell J.*

4  *Reger.*

5              Present on behalf of the Respondent in

6  the matter, Judge Walker, is Mr. Steven Conder, a

7  District Attorney -- Assistant District Attorney with

8  the office of Tarrant County District Attorney.

9              Mr. Conder, please identify yourself.

10             MR. CONDER:  Your Honor, I'm Steve Conder

11  with the Tarrant County DA's office.

12             THE COURT:  Mr. Reger, and, Mr. Caraway,

13  could you hear Mr. Conder?

14             MR. REGER:  Just barely, Your Honor.

15             THE COURT:  I'll have him move over

16  closer to this conference phone.

17             Identify yourself again, Mr. Conder, so

18  they know your voice.

19             MR. CONDER: Stephen Conder with the

20  Tarrant County DA's office.

21             THE COURT:  All right.  Mr. Reger, you

22  may proceed on your motion, and then, Mr. Caraway, I

23  will allow you to supplement Mr. Reger's motion as you

24  deem appropriate.

25             And then Mr. Conder may respond, and then

1    I will listen to replies.

2            Mr. Reger, I have -- for your benefit, I

3    want you to know that I have read -- and, Mr. Caraway,

4    I have read the pleadings in this matter, and I am

5    familiar with the contents of those pleadings and the

6    exhibits thereto.

7            And so I would think, Mr. Reger, that

8    approximately ten minutes would be enough for you to

9    make your oral presentation, and, Mr. Caraway, I would

10   assume five to ten minutes would be sufficient for

11   you.

12           Mr. Conder, I would think five minutes or

13   less would be sufficient for you to sum up the

14   position of the Court.

15           In order that you know that the record is

16   being made, present and taking the record in this case

17   is the court reporter of the 48th District Court.  I

18   am sitting by assignment of the Chief Justice of the

19   Texas Supreme Court, Wallace Jefferson, on this matter

20   of recusal.

21           And, Mr. Reger, you may proceed.

22           MR. REGER:  Thank you, Your Honor.  One

23   thing that I was going to ask is that this setting

24   stays directly to the recusal issue only.

25           THE COURT:  That is what it will stay --

1   that is the correct limitation of this proceeding.

2          MR. REGER:  I first would like to start

3   off with saying that on March 17th of 2005, the

4   intervenor, Randal Franklin Caraway, filed a verified

5   petition to take depositions in the potential claim.

6          The named deponent therein is a man named

7   William "Bill" Burdock, deponent, who is also related

8   to the very same subject matter in this case.

9          The intervenor's case was quickly routed

10   into the 96th Judicial District Court in Tarrant

11   County.  Mr. Caraway was quickly notified of the

12   filing in that case.

13          On May 3rd, 2005, Mr. Caraway filed a

14   motion to recuse Judge Jeff Walker, which is now on

15   file in Appeal Case Number 02-05-359-CV at page 62

16   through 71.

17          Mr. Caraway had attached a motion -- a

18   copy of a letter from Texas Comptroller of Public

19   Accounting, who had implicated Judge Walker into a

20   potential witness in his case.

21          Then on May 5, 2005, Judge Walker quickly

22   returned a letter back to Mr. Caraway, which stated,

23   in part, "...solely based on your pleading that

24   Judge Jeff Walker should be recused because there is

25   propensity that he may become a party to the potential

1  claim or suit, I am going to voluntarily step aside

2  and assign another judge in this case."

3          And that letter is on file in the Second

4  Court of Appeals right now at this time.

5          That case was sent into the 153rd

6  Judicial District Court on May the 6th; was litigated

7  forthwith from there.

8          In this case, which is also a Texas Rules

9  of Civil Procedure 202 deposition, my cover letter

10 addressed the Tarrant County District Clerk, dated

11 March 22nd, specifically instructed the clerk not to

12 file this very proceeding into the 96th Judicial

13 District because Jeff Walker was disqualified from

14 hearing or presiding over this case; moreso because

15 Intervenor Caraway was also filing his pleadings along

16 with my own.

17         The clerk gained possession of that

18 letter and my pleadings, along with Mr. Caraway's

19 pleadings, on April the 5th.  There is no way the

20 clerk could have missed our instructions.

21         Judge Jeff Walker should have known that

22 he was disqualified from presiding other this case,

23 first, because he had already recused himself from

24 Intervenor Caraway's earlier Rule 202 deposition

25 proceeding in May of 2005; and, secondly, because my

1  exhibits listed within Petition Reger's motion purport
2  to take judicial notice of adjudicated facts in
3  support of verified petition to take deposition, and
4  clearly exhibit a propensity for Judge Walker that he
5  will also become a party or is already a party to the
6  potential claim or suit which now appends this very
7  cause.
8          As this court has already reviewed, may
9  it take judicial notice of the pleading, which is
10  quite large, you will have seen that there is numerous
11  exhibits attached to it from state agencies that
12  implicate Judge Walker into being a witness in this
13  very same case.
14          Also within the judicial notice pleading
15  is an attached exhibit at -- Exhibit H are two news
16  articles from *Fort Worth Weekly* discussing the very
17  same subject matter of this case.  One is entitled *"So
18  Help Me God."*  At page 2, 3, and 4, they all exhibit
19  Judge Walker making responses to the public through
20  Dan Malone about the subject matter that is being
21  investigated in this claim.
22          Judge Walker has himself also admitted to
23  Dan Malone of the *Fort Worth Weekly* in those articles
24  that he knows certain judges failed to execute their
25  constitutional oaths for a ten-year period before

1  accepting assignments from the Eighth Administrative

2  Judicial Administration Region.

3          Clearly, Mr. Caraway and myself have made

4  an undisputed prima facie showing that our former

5  presiding judges did not execute their oaths.  The

6  State has never disputed those facts to date.

7          In any event, it is greatly disturbing to

8  see that Judge Walker, who has himself given a sworn

9  oath before God to preserve, protect, and defend the

10  Constitution and laws of the United States, now

11  prevents or prolongs our endeavor to seek the truth in

12  the matter.

13          And, at this time, on top of the

14  litigation that we currently have pending, we are in

15  the process of preparing another 202 proceeding that

16  lists Judge Walker as a deponent.

17          The record in my case, also in this

18  instant case, reveals that Judge Walker has a personal

19  bias or prejudice against -- and Intervenor Caraway to

20  the subject matter or potential claim.

21          Government Code 552.028 and Texas Rules

22  of Judicial Administration 12.4(b) all have directives

23  directed towards records custodians that state that

24  they may voluntarily disclose requested inmates or

25  their agencies.

1          Judge Walker has made it clear time and
2     time again in our research persons voluntarily
3     disclose information from his office to myself or to
4     the intervenor or any agency acting in our behalf.
5          The void order of dismissal dated
6     April 25th, 2007, goes straight to the very heart of
7     this fact when proclaiming that the case was
8     attempting an end run around Texas Rules of Judicial
9     Administration 12.4(a), being steadfast in taking --
10    making sure that myself and Intervenor Caraway will
11    never expose the truth nor implicate himself in his
12    action in the truth of this potential claim.
13         He has reason to want this issue buried,
14    and it is no accident that my own Intervenor Caraway's
15    cases were routed into his court.  Shown on this
16    record to have personal knowledge of disputed facts
17    and as an administrative individual and judiciary,
18    also had the personal interest in the subject matter
19    of this case.
20         The named deponent had a personal friend
21    and coworker, Ouida Stevens, who is also listed in
22    this case and also has an interest.  Everything in
23    this case is tied back to the Eighth Administrative
24    Judicial Region in one form or another, every state
25    agency that we have on record pointing back to his

1  office.

2          We are just simply seeking to get

3  evidence to substantiate our potential claims, which

4  we don't know how or what they are going to get filed

5  into, if it's going to be civil or criminal.  We are

6  just trying to see if we have a claim in the first

7  place, and we can't discover what is unknown to us at

8  this time.

9          Both the United States Supreme Court and

10  Texas case precedents proclaim that Judge Walker is

11  barred from presiding over this case.  The mere fact

12  of the matter is, is Williams presided over Intervenor

13  Caraway's case -- is still involved in this case.

14          Judge Walker has already conceded that he

15  is disqualified from presiding over that case.  And it

16  would seem strange for him to vacillate now and to

17  come forward and say that he is not disqualified from

18  presiding over this case.

19          Standing on our pleadings and evidence

20  that's on file in this record, we would ask that this

21  court would grant the motion choosing to disqualify

22  Judge Jeff Walker.

23          THE COURT:  All right.  Mr. Caraway,

24  would you like to make your presentation?

25          MR. CARAWAY:  Yes, briefly, Your Honor.

1  I have intervened into Mr. Reger's proceeding

2  concerning the subject matter of Clyde Ashworth and

3  the administrative judge at the time in question, and

4  Ouida Stevens' actions regarding the assignment and

5  required constitutional qualifications of former Judge

6  Bill Burdock under the Texas Constitution, Section 1;

7  United States Constitution, Article 6, Clauses 2 and

8  3; Texas Code of Criminal Procedure, Article 30.04 and

9  30.05, relative to my original trial in Cause

10  CR-95-1972.

11          Mr. Reger is also seeking to -- the same

12  from those same deponents in regards to James K.

13  Walker.  In view of the fact that Clyde Ashworth and

14  Ouida Stevens are one of the same responsible for the

15  assignments of James K. Walker, Bill Burdock, both, we

16  are seeking to save judicial economy by using this one

17  proceeding to investigate our potential claims.

18          And the fact that Mr. Walker has already

19  recused himself from this proceeding to the same

20  individuals, it doesn't seem just that he would now

21  announce when the same individuals are gone.

22          And I just ask that -- *(inaudible*

23  *comment.)*

24          THE COURT:  Mr. Caraway, we didn't -- you

25  broke up on the conference machine just a second ago,

1   your last portion of your presentation.

2               Why don't you repeat your closing there.

3               MR. CARAWAY:  Okay.  Due to the fact that

4   the same information that Mr. Reger is seeking to

5   depose Clyde Ashworth and Ouida Stevens of is the

6   reason that I intervened into the petition.  The

7   same -- Bill Burdock is the same case and the same

8   facts that Judge Jeff Walker has already previously

9   recused from.  I would ask that he remain recused from

10  the case, as I am now an intervenor in it.

11              THE COURT:  Did you get that, Ms. Smith?

12              THE REPORTER:  Yes.

13              THE COURT:  All right.  Now, Mr. Conder,

14  do you have a response on this matter?

15              MR. CONDER:  Just very briefly,

16  Your Honor.  I won't get into all the background

17  stuff, because I think that's pretty clear from the

18  filings of the parties.

19              It's just the position is that

20  Judge Walker doesn't support the disqualification of

21  Judge Walker.  He wasn't an attorney in the case; he

22  doesn't have an interest in the case; he is not

23  related to the parties.

24              The State understands it involves the

25  prior administrative judge, Judge Ashworth, but

1   it's -- still, that does not automatically disqualify

2   Judge Walker since he -- merely because he took the

3   position that Judge Ashworth formerly had.

4           As for the recusal, the State

5   acknowledges that he recused himself in the Caraway

6   case, but that just doesn't mean he has to recuse

7   himself every time this situation comes up; that it's

8   just -- that it is not a blanket recusal.

9           And there is nothing in this case to

10  suggest that he can't fairly look at what all has gone

11  on, what all has been filed, and whether or not this

12  was a properly-filed 202 request.

13          The State's position is simply that

14  Judge -- the recusal and disqualification grounds

15  against Judge Walker don't -- don't meet merit, and

16  that simply the litigant's unhappy with his ruling in

17  the case.

18          THE COURT:  The -- gentlemen, were you

19  able to hear that?

20          MR. REGER:  Yes, sir.

21          THE COURT:  All right.  Mr. Caraway, my

22  recollection of the procedure is, is that -- and,

23  Mr. Reger -- is that this motion to recuse and the

24  intervention were filed after Judge Walker signed an

25  order of dismissal.  Am I correct?

1          MR. REGER:  Your Honor, on the motion to

2   recuse?

3          The motion to recuse was filed after

4   Judge Walker had signed the April 25th order to

5   dismiss, but Intervenor Caraway had filed his motion

6   to intervene at the same time that I filed my petition

7   in this case.

8          THE COURT:  Thank you.  Let me check that

9   procedurally by reviewing the file.  That may help

10  correct -- may help me understand the proceedings.

11         MR. REGER:  All right.

12         THE COURT:  I'll be just a second.  I'll

13  be back with you.  I'm checking online to make sure I

14  understand the procedural status of the case.

15         *(Brief pause in proceedings.)*

16         THE COURT:  Thank you.  I have completed

17  my review, and, Mr. Reger, and, Mr. Caraway, you are

18  correct in your recitation on timing of the filing of

19  the intervention.  That helps me keep the procedural

20  timetable in mind.

21         Is there anything else Mr. Reger or

22  Mr. Caraway would like to add to this hearing before I

23  close this record?

24         MR. REGER:  Yes, Your Honor.

25         THE COURT:  Is it Mr. Reger?

```
 1              MR. REGER:  Yes, this is Mr. Reger.

 2              Intervenor Caraway has been a named party

 3   to this case for -- since the -- this proceeding was

 4   filed, and he has not been getting copies of anything

 5   from Mr. Conder, if that could be addressed.

 6              THE COURT:  I'll make sure that

 7   Mr. Conder is aware of that, and he will -- he is

 8   hereby ordered to make certain that in the future

 9   Mr. Caraway is copied.

10              MR. REGER:  Thank you, sir.

11              THE COURT:  Anything further, gentlemen?

12              MR. REGER:  No, Your Honor.

13              MR. CARAWAY:  Not at this moment, sir.

14              THE COURT:  Thank you very much.  I'm

15   going to take this matter under advisement, and I will

16   issue a ruling.

17              We are adjourned.

18              Officer, I'm going to close off the

19   phone.

20              Officer Gonzalez...

21              OFFICER GONZALEZ:  Yes, sir.

22              THE COURT:  I'm closing off my phone.

23   Thank you.

24              OFFICER GONZALEZ:  Thank you.

25              (Proceedings adjourned at 2:03 p.m.)
```

1  THE STATE OF TEXAS      )

2  COUNTY OF TARRANT       )

3          I, Micki Smith, Official Court Reporter in and

4  for the 48th District Court of Tarrant County, State

5  of Texas, do hereby certify that the above and

6  foregoing contains a true and correct transcription of

7  all portions of evidence and other proceedings

8  requested in writing by the Petitioner to be included

9  in this volume of the Reporter's Record, in the

10 above-styled and -numbered cause, all of which

11 occurred in open court or in chambers and were

12 reported by me.

13         I further certify that this Reporter's Record

14 of the proceedings truly and correctly reflects the

15 exhibits, if any, admitted by the respective parties.

16         I further certify that the total cost for the

17 preparation of this Reporter's Record is $_____.

18         WITNESS MY OFFICIAL HAND this the 31st

19 day of July, 2007.

20         _____

21         MICKI SMITH, TEXAS CSR NO. 6926
           Certification Exp. Date: 12/31/08
22         Official Court Reporter
           48th District Court, 8th Floor
23         401 West Belknap Street
           Fort Worth, Texas 76196

24

25

MICKI SMITH, CSR, RPR  ~  (817) 884-1479
OFFICIAL COURT REPORTER ~ 48TH DISTRICT COURT